## Cook and others vs. McCabe.

*October 18 — November 3, 1881.*

CONTRACTS. *(1) House destroyed while in process of construction: whose loss? (2) Measure of contractor's damages. (3) Contract construed as to time when payment was due.*

REVERSAL OF JUDGMENT: *(4) For improper compulsory reference.*

1. Where there was not an absolute and indivisible contract to build a complete house for a specified sum, but only a contract to do a part of the work and furnish a part of the materials, the remainder to be otherwise provided for, from time to time, by the land-owner (although the price was a fixed aggregate sum, and no payment was to be made until after the house was completed), and the part built was destroyed by fire before the completion of the whole, and was not restored by the land-owner: *Held*, that the contractor might recover for work and materials actually done and furnished by him — especially where the land-owner had treated the house as his own, by procuring insurance thereon and receiving the insurance money.

2. The measure of the contractor's damages in such a case is *prima facie* a *pro rata* share of the contract price.

3. Under an agreement to pay a certain sum on the completion of work, and the remainder of the price within sixty days thereafter, without interest, a further provision that, if such remainder is not paid within six months after the work is completed, a specified rate of interest shall be paid thereon, does not prevent the debt from falling due at the end of the sixty days.

4. Where the trial court, upon the undisputed evidence, might have directed a verdict for the respondent for the full amount awarded him by the judgment, the fact that a reference for trial was improperly ordered without appellant's consent, is not ground of reversal.

APPEAL from the Circuit Court for *Winnebago* County. The case is thus stated by Mr. Justice CASSODAY:

"This is an action to recover for services rendered and materials furnished by the firm of Cook, Brown & Co., composed of the plaintiffs, for the defendant, *John McCabe*, in the erection and construction of a dwelling-house under a special written contract entered into between them July 11, 1878. By the terms of the contract, as near as we can gather from the loose and incoherent language employed, Cook, Brown & Co. agreed, in effect, to substantially build the dwelling-house in a good, workmanlike manner, and according to their best skill, and in accordance with the plans and specifications therein contained, of stone, brick and mason work; the walls to be up and completed and ready for roofing on or before September 1, 1878, and the remainder of the work to be completed on or before October 1, 1878; and they were also to do all the labor in and about the mason work, including making mortar and boarding masons and putting the lath on, and to do all building and furnish necessary material, except such work and material as were thereby required to be performed and furnished by *McCabe*, and except that the said Cook, Brown & Co. were not to do any of the joiner work, painting or glazing, nor any of the carpenter work. The said *McCabe* thereby agreed, in effect, to haul all brick, and furnish twenty-four barrels of lime for said building, and to furnish all good, suitable material for said building on the ground where it was to be built, in time so as not to hinder or delay the mason work, and as fast as needed and required, and to furnish all sand and stone required. For the services to be rendered and the materials to be furnished by Cook, Brown & Co., *McCabe* thereby agreed, in effect, to pay them $580, in time and manner following, to wit: $150 upon completion of the work by them, and the remaining $430 within sixty days, without interest; and, if the same were not paid within six months after completion, then to pay thereon seven per cent. interest; and, if the same were

not paid for one year from the completion of the work, then to pay thereon ten per cent. interest. And for the true and faithful performance of all the agreements contained in said contract, the several parties thereby bound themselves in the penal sum of $250, stipulated damages, to be paid by the party failing to fully comply with any of the conditions thereof. The complaint alleged among other things, in effect, that *McCabe* had refused and neglected to excavate the cellar in time, and had refused and neglected to complete the carpenter work in time; and that Cook, Brown & Co. had been greatly hindered and delayed thereby, but that they had, notwithstanding, on the 19th of October, 1878, completed all they were to perform under the contract, except putting the hard finish on the inner walls in the upper story, and putting mortar and hard finish on the walls of the lower story; that on the night of October 20, 1878, without any fault or negligence of the plaintiffs, said dwelling-house was burned and wholly destroyed by fire, by reason whereof they were prevented from completing and finishing the work, but that they had ever since the fire been ready and willing to complete the work so unperformed by reason of the fire; that they had only received $150 of the contract price, and there was still due them for the materials they had furnished and the part of the work they had performed, over and above such payment, $396, with interest at ten per cent. from October 19, 1878, for which sum they prayed judgment, and a mechanic's lien upon the premises.

"The answer alleged, in effect, that the materials furnished and labor performed by the plaintiffs did not exceed in value $420, and denied negligence on the part of the defendant, and denied performance of the contract on the part of the plaintiffs, and denied all liability, and alleged that if anything was due it had not accrued when the action was commenced, December 15, 1879."

Against the objections of both parties, the cause was re-

ferred by the court to a referee to hear, try and determine. The referee found for the plaintiffs, assessed their damages at $477.41, and held that they were entitled to a lien therefor. His report was confirmed by the court; and, from a judgment in accordance therewith, the defendant appealed.

For the appellant there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber*. They contended, *inter alia:* 1. It was error to refer the case against the objection of both parties. *Knips v. Stefan*, 50 Wis., 289; *Stone v. Merrill*, 43 id., 72; *Tronson v. Union Lumbering Co.*, 38 id., 202; *Armstrong v. Gibson*, 31 id., 61; *Gilbank v. Stephenson*, id., 592; *Cairns v. O'Blenness*, 40 id., 469. 2. Where a contract is entire and indivisible, as for the building of a house for a specified sum to be paid on its completion, and the edifice is destroyed by lightning, fire or tempest during the progress of the work, the contractor must bear the loss and be at the expense of repairing the damages. Addison on Con., § 869; Chitty on Con., § 1078; *School Trustees of Trenton v. Bennett*, 27 N. J. Law (3 Dutch.), 513; *Paradine v. Jane*, 1 Aleyn, 26; *Walton v. Waterhouse*, 2 Saunders, part 2, p. 420; *Brecknock Canal Co. v. Pritchard*, 6 Term, 750; *Bullock v. Dommitt*, id., 650; *Phillips v. Stevens*, 16 Mass., 238; *Adams v. Nichols*, 19 Pick., 275; *Brumby v. Smith*, 3 Ala., 123; *Dermott v. Jones*, 2 Wall., 8; *Andrews v. Durant*, 11 N. Y., 35; *School District v. Dauchy*, 25 Conn., 530; *Harmony v. Bingham*, 2 Kern., 99; *Barker v. Hodgson*, 3 M. & S., 267; *Barret v. Dutton*, 4 Campb., 335; *Atkinson v. Ritchie*, 10 East, 530; *Beebe v. Johnson*, 19 Wend., 500; *Malbon v. Birney*, 11 Wis., 107; *Jackson v. Cleveland*, 15 id., 107; *Mut. B. L. Ins. Co. v. Hillyard*, 8 Vroom, 483; *Brown v. Fitch*, 4 id., 422. If a party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by contract. *Trustees of Trenton v. Bennett*, 3 Dutch., 514; *Tompkins v.*

*Dudley,* 25 N. Y., 277. This is not a case where the contractor agreed to do certain specific work upon property already in existence and controlled by the owner. *Lord v. Wheeler,* 1 Gray, 282; *Niblo v. Binsse,* 1 Keyes, 476.

For the respondents there was a brief by *Weisbrod & Harshaw,* and oral argument by *Mr. Weisbrod.*

CASSODAY, J. Neither party offered to furnish materials, and rebuild and restore the portions of the building destroyed by the fire. On the contrary, each insisted upon the other suffering the loss. A large number of cases are cited in support of the proposition that in case of an entire and indivisible contract for the building of a house for a specified sum, to be paid on its completion, and where the edifice is destroyed by fire during the progress of the work, the builder must bear the loss and be to the expense of repairing the damages. The principle underlying the proposition contended for, to a certain extent, is undoubtedly correct.

In *Brecknock Canal Co. v. Pritchard,* 6 Durnf. & East., 750, the bridge which the contractor agreed to build was broken down by an extraordinary flood, and KENYON, C. J., said: "If the defendants had chosen to except any loss of any kind, it should have been introduced into the contract by way of exception." So it was held, on the authority of Lord Chief Justice HALE, that "the lessee of a house, who covenants generally to repair, is bound to rebuild it if it be burned by an accidental fire." *Bullock v. Dommitt,* id., 650. See *Walton v. Waterhouse,* 2 Saunders, 420; *S. C.,* 3 Keble, 40; 2 Williams' Notes to Saunders' R., 826; *McKenzie v. McLeod,* 10 Bing., 385; *Phillips v. Stevens,* 16 Mass., 238; *Dermott v. Jones,* 2 Wall., 1; *Kramer v. Cook,* 7 Gray, 550. So it has been held that, "where a contract is made to build and complete a building and find materials for a certain entire price, payable in installments as the work progresses, the contract is entire; and if the building, either by fault of the

builder or by inevitable accident, is destroyed before comple-
tion, the owner may recover back the installments he has paid."
*School Trustees of Trenton v. Bennett*, 27 N. J. L., 513. So
it has been held that non-performance by a builder, under such
an entire contract, was not excused by the destruction of the
building by lightning.   *School District v. Dauchy*, 25 Conn.,
530.   So, "where a person contracted to build a house on the
land of another, and the house was, before its completion, de-
stroyed by fire, without his fault, it was held that he was not
thereby discharged from his obligation to fulfil his contract."
*Adams v. Nichols*, 19 Pick., 275.

Such cases are distinguishable from one where the contractor
agrees to repair another's house already built, and it burns
before completion of the repairs.   *Lord v. Wheeler*, 1 Gray,
282;  *Wells v. Calnan*, 107 Mass., 517.

But the case at bar is not one of an entire contract to com-
plete an entire building.   It is more like *Brumby v. Smith*,
3 Ala., 123, in which it was held that "where a workman
agreed to complete the carpenter's work on a house, and to
receive a certain sum on the completion of the work, his em-
ployer furnishing the materials, and the house and materials
were destroyed by fire, without the fault of the workman, the
house being in the possession of the employer, *held*, that
the workman could not recover a *pro rata* compensation for
the work actually done."

The opinion in that case is based upon *Cutter v. Powell*, 6
Durnf. & East, 320, and *Menetone v. Athawes*, 3 Burr., 1592.
In *Cutter v. Powell* the sailor was to be paid the sum named,
"provided he proceed, continue, and do his duty on board for
the voyage;" and that case, in the language of ALLEN, J., in
*Wolfe v. Howes*, 20 N. Y., 200, "is distinguishable in this,
that by the peculiar wording of the contract it was converted
into a wagering agreement, by which the party, in considera-
tion of an unusually high rate of wages, undertook to insure

his own life, and to render, at all hazards, his personal services during the voyage, before the completion of which he died." Lord KENYON, in deciding *Cutter v. Powell*, refers to the peculiar terms of the contract, and says "it was a kind of insurance." Page 324. See *Taylor v. Laird*, 25 L. J. (Exch.), 329. In the other case refered to, *Menetone v. Athawes*, the shipwright took the ship to his own dock for repairs, the owner agreeing to pay a sum named for the use of the dock, and also for the repairs; and it was held that "the value of repairs may be recovered though a ship be burnt in dock."

In *Niblo v. Binsse*, 3 Abb. N. Y. Ct. Ap. Dec., 375 *(S. C.,* 1 Keyes, 476), it was held that, " if the owner of a building contracts for labor upon it, he is under an implied obligation to have the building ready and in a condition to receive the labor contracted for; and if, before the work is completed, the building is destroyed by fire, without the fault of the contractor, the owner is in default, and the contractor can recover for all that was done up to the time of the fire." In that case, as well as this, the time of performance had been extended by the mutual assent of the parties to the contract. *Schwartz v. Saunders*, 46 Ill., 18, was a case where " the plaintiff entered into a contract with the defendant to do the carpenter work and furnish the materials therefor upon a brick building; the mason work was to be done by another and independent contractor. After the brick work was nearly completed and a part of the carpenter work done, the brick walls were blown down. *Held*, that the loss as to the carpenter work fell upon the defendant." The court properly distinguished the case from some of the cases cited above, on the ground that " the plaintiff had not undertaken to erect and finish this building and deliver it."

In *Rawson v. Clark*, 70 Ill., 656, the contractors agreed to manufacture and put into a building then in process of construction, certain iron work, but were prevented from com-

pleting their contract by the building being destroyed by fire without their fault; and the court held they could recover *pro tanto*, and without performing the balance of their contract.

*Hollis v. Chapman*, 36 Tex., 1, was a case where the plaintiff, a carpenter, undertook to furnish materials and do the wood work necessary to finish defendant's brick building, and to turn over the building, complete, by a given day, for a specified gross sum. When the plaintiff had nearly completed the work, the building was destroyed by fire, without his fault; and the court held that the plaintiff was entitled to recover for the materials furnished and work done by him. Stress was there laid upon the fact that the contract was conditional — that is, dependent upon the execution of another contract; and hence it was held to be apportionable, and the contractor entitled to a *pro rata* pay for his work.

*Taylor v. Caldwell*, 3 Best & Smith, 826, was a case of destruction by fire of a music hall engaged for concerts, and it was held that both parties were thereby excused from performance, because the general rule requiring absolute performance "is only applicable when the contract is positive and absolute, and not subject to any condition, either express or implied." It was there also held that, "where, from the nature of the contract, it appears that the parties must from the beginning have known that it could not be fulfilled, unless, when the time for the fulfillment of the contract arrived, some particular specified thing continued to exist, so that, when entering into the contract, they must have contemplated such continuing existence as the foundation of what was to be done, there, in the absence of any express or implied warranty that the thing shall exist, the contract is not to be construed as a positive contract, but as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible from the perishing of the thing without the default of the contractor.

VOL. LIII — 17

In the case at bar, as stated, Cook, Brown & Co. were not to do any of the carpenter work, joiner work, painting or glazing, and only to perform so much of the stone, brick and mason work, and furnish so much of the materials therefor, as was not to be furnished and performed by *McCabe*, who expressly agreed to furnish upon the ground all the sand and stone and twenty-four barrels of lime, and to haul all the brick, and to furnish all good suitable materials. It is evident from the contract that the materials for the mason work and the labor thereon were to be furnished and performed by Cook, Brown & Co. and *McCabe*, acting in conjunction with each other. The completion of the mason work, which was thus to result from their joint action, must necessarily have been dependent more or less upon the performance of the painting, glazing, carpenter and joiner work, with each and all of the persons doing the several kinds of work occupying the building, or portions of it, at the same time. With much of the material and the land belonging to *McCabe*, and the materials furnished by Cook, Brown & Co., together with the value of their labor thereon, becoming a part of the realty as fast as the same became attached to the soil, it would seem that no injustice can be done and no legal principle violated by treating the structure, as far as completed, as the property of *McCabe*, especially as he so treated it himself, and got it insured for his own benefit, and when burned received the insurance therefor.

The facts stated clearly distinguish the case from *Jackson v. Cleveland*, 15 Wis., 107, and all the other cases cited by the counsel for the appellant, unless it is *Brumby v. Smith*, 3 Ala., 123; and that, in our judgment, is not sustained by principle or authority, and should therefore be disapproved. Upon principle, as well as the authorities cited, we are induced to hold that, (1) Where there is a positive contract to do a thing, not in itself unlawful, the contractor must perform it or pay damages for not doing it, although, in consequence of unforeseen accidents, the performance of his contract has become

unexpectedly burdensome or even impossible. (2) But this rule is only applicable when the contract is positive and absolute, and not subject to any condition, either express or implied. (3) Where, from the nature of the contract, it appears that the parties must, from the beginning, have known that it could not be fulfilled, unless, when the time for the fulfillment of the contract arrived, some particular specified thing continued to exist, so that, when entering into the contract, they must have contemplated such continuing existence as the foundation of what was to be done, there, in the absence of any express or implied warranty that the thing shall exist, the contract is not to be construed as a positive contract, but as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible from the perishing of the thing without default of the contractor. (4) Where, as here, one having nothing to do with the painting, glazing, carpenter or joiner work, contracts to furnish materials for the mason work of a building and perform the labor thereon, except that the owner, for whom the same is to be constructed, is to furnish upon the ground all the sand, stone, and a certain quantity of lime, and haul all the brick, and the building, not being in the exclusive possession of such contractor, just before completion, is destroyed by fire, without the fault of the contractor, the loss must fall upon the owner, especially where he has the same insured at the time for his benefit; and such owner cannot require the completion of the balance of the building without restoring the parts which were so destroyed.

With our construction of the contract, the defendant was entitled to sixty days within which to make payment of the balance of the contract price, without interest; but if he delayed payment for six months, then he agreed to pay seven per cent., and if one year, then ten per cent. These provisions for interest and an increase of interest were, in our opinion, merely to stimulate the defendant to pay promptly at the end

of sixty days, or, at the most, within six months, and not for the purpose of giving an absolute credit of one year.

The measure of damages in such a case is, *prima facie*, the *pro rata* share of the contract price. *Trowbridge v. Barrett*, 30 Wis., 661; *Danley v. Williams*, 16 Wis., 581.

We are inclined to think that counsel for the appellant is right in contending that this was not a proper case for a forced reference; but with our view of the law the court would have been authorized, upon the undisputed evidence, to direct a verdict for the plaintiffs; and as the amount, under such evidence, could not have been less than the amount found by the referee, the defendant has in no way been injured, and therefore, upon a well-established principle, we should not disturb the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.