ALONZO M. BUTTERFIELD *vs.* NAPOLEON L. BYRON.

Hampden.    September 23, 1890. — May 19, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Building Contract — Act of God — Implied Condition — Failure of Consideration — Assumpsit.*

A builder and a landowner entered into a contract, by which the former was to "make, erect, build, and finish" a hotel upon the land, and the latter was to do the grading, excavating, stone-work, brick-work, painting, and plumbing, and pay a certain sum as follows: each month seventy-five per cent of the value of the work of the preceding month, the balance in thirty days after completion. The building was destroyed by lightning shortly before completion. *Held,* that the contract was upon an implied condition that the building when begun should continue in existence until completed; and that neither party could recover damages for a non-performance of the contract, but each might recover from the other, the landowner for what he had paid, the builder for what he had done and furnished, under the same.

CONTRACT, brought in the name of the plaintiff for the benefit of certain insurance companies, for breach of a building contract entered into between the plaintiff and the defendant. At the trial in the Superior Court, before *Barker,* J., there was evidence tending to show the following facts.

On November 13, 1888, the plaintiff, who owned a parcel of land in the town of Montgomery, on which he intended to build a hotel, and the defendant, who was a builder, entered into the contract in question, which contained the following provisions:

" The said N. Byron covenants and agrees to and with the said A. M. Butterfield to make, erect, build, and finish in a good, substantial, and workmanlike manner, a three and one half story frame hotel upon lot of land situated in Montgomery, Mass., said hotel to be built agreeable to the draught, plans, explanations, or specifications furnished, or to be furnished, to said A. M. Butterfield by Richmond and Seabury, of good and substantial materials, and to be finished complete on or before the twentieth day of May, 1889.

" And said A. M. Butterfield covenants and agrees to pay to said N. Byron for the same eight thousand five hundred dollars, as follows : seventy-five per cent of the amount of work done and materials furnished during the preceding month to be paid for on the first of the following month, and the remaining twenty-five per cent to be paid thirty days after the entire completion of the building."

By the specifications referred to, the plaintiff was to do the grading, excavating, stone-work, brick-work, painting, and plumbing.

The time for completing the contract was subsequently extended to June 10, 1889, and a provision was made that the defendant should forfeit $15 for every day's default after that date. Up to May 25, 1889, the defendant had complied with the contract as far as he had gone, and had almost finished the building. The plaintiff, who had insured his interest in the building with the companies for whose benefit the action was brought, had up to the same time made payments to the defendant amounting to $5,652.30, for work done and materials furnished. On May 25 the building was struck by lightning and burned to the ground, by which event it was rendered impossible for the defendant to complete the building within the required time. The companies in which the plaintiff had insured paid him the sum of $6,914.08, viz. $5,652.30 for advances made to the defendant, and $1,261.78 for work done and materials furnished by the plaintiff in laying the foundations; and the plaintiff assigned to the companies whatever claims he might have against the defendant for breach of the contract. The plaintiff never made any demand upon the defendant to rebuild, nor offered to lay the necessary foundations for a new building.

The defendant never called upon the plaintiff to lay such foundations, nor offered to rebuild.

At the trial, the plaintiff contended that he was entitled to recover in his action (1) the whole of the sum of $6,914.08, (2) $38 for certain shingles and window weights that had been saved from the fire and carried away by the defendant, and (3) the amount forfeited under the contract at the rate of $15 a day from June 10, 1889, to the date of the writ.

Upon these facts the judge directed a verdict for the defendant, and reported the case for the determination of this court, such order to be made as the court might direct.

The case was argued at the bar in September, 1890, and afterwards, in February, 1891, was submitted on the briefs to all the judges.

*G. D. Robinson*, for the plaintiff.

*G. M. Stearns*, ( *W. B. Stone* with him,) for the defendant.

KNOWLTON, J. It is well established law, that, where one contracts to furnish labor and materials, and construct a chattel or build a house on land of another, he will not ordinarily be excused from performance of his contract by the destruction of the chattel or building, without his fault, before the time fixed for the delivery of it. *Adams* v. *Nichols*, 19 Pick. 275. *Wells* v. *Calnan*, 107 Mass. 514. *Dermott* v. *Jones*, 2 Wall. 1. *School Trustees of Trenton* v. *Bennett*, 3 Dutcher, 513. *Tompkins* v. *Dudley*, 25 N. Y. 272. It is equally well settled, that when work is to be done under a contract on a chattel or building which is not wholly the property of the contractor, or for which he is not solely accountable, as where repairs are to be made on the property of another, the agreement on both sides is upon the implied condition that the chattel or building shall continue in existence, and the destruction of it without the fault of either of the parties will excuse performance of the contract, and leave no right of recovery of damages in favor of either against the other. *Taylor* v. *Caldwell*, 3 B. & S. 826. *Lord* v. *Wheeler*, 1 Gray, 282. *Gilbert & Barker Manuf. Co.* v. *Butler*, 146 Mass. 82. *Eliot National Bank* v. *Beal*, 141 Mass. 566, and cases there cited. *Dexter* v. *Norton*, 47 N. Y. 62. *Walker* v. *Tucker*, 70 Ill. 527. In such cases, from the very nature of the agreement as applied to the subject matter, it is manifest that, while noth-

ing is expressly said about it, the parties contemplated the continued existence of that to which the contract relates. The implied condition is a part of the contract, as if it were written into it, and by its terms the contract is not to be performed if the subject matter of it is destroyed, without the fault of either of the parties, before the time for complete performance has arrived.

The fundamental question in the present case is, What is the true interpretation of the contract? Was the house while in the process of erection to be in the control and at the sole risk of the defendant, or was the plaintiff to have a like interest, as the builder of a part of it? Was the defendant's undertaking to go on and build and deliver such a house as the contract called for, even if he should be obliged again and again to begin anew on account of the repeated destruction of a partly completed building by inevitable accident, or did his contract relate to one building only, so that it would be at an end if the building, when nearly completed, should perish without his fault? It is to be noticed that his agreement was not to build a house, furnishing all the labor and materials therefor. His contract was of a very different kind. The specifications are incorporated into it, and it appears that it was an agreement to contribute certain labor and materials towards the erection of a house on land of the plaintiff, towards the erection of which the plaintiff himself was to contribute other labor and materials, which contributions would together make a completed house. The grading, excavating, stone-work, brick-work, painting, and plumbing were to be done by the plaintiff.

Immediately before the fire, when the house was nearly completed, the defendant's contract, so far as it remained unperformed, was to finish a house on the plaintiff's land, which had been constructed from materials and by labor furnished in part by the plaintiff and in part by himself. He was no more responsible that the house should continue in existence than the plaintiff was. Looking at the situation of the parties at that time, it was like a contract to make repairs on the house of another. His undertaking and duty to go on and finish the work was upon an implied condition that the house, the product of their joint contributions, should remain in existence. The destruction of it by fire discharged him from his contract. The

fact that the house was not in existence when the contract was made is immaterial. *Howell* v. *Coupland,* 1 Q. B. D. 258.

It seems very clear that, after the building was burned, and just before the day fixed for the completion of the contract, the defendant could not have compelled the plaintiff to do the grading, excavating, stone-work, brick-work, painting, and plumbing for another house of the same kind. The plaintiff might have answered, " I do not desire to build another house which cannot be completed until long after the date at which I wished to use my house. My contract related to one house. Since that has been destroyed without my fault, I am under no further obligation." If the plaintiff could successfully have made this answer to a demand by the defendant that he should do his part towards the erection of a second building, then certainly the defendant can prevail on a similar answer in the present suit. In other words, looking at the contract from the plaintiff's position, it seems manifest that he did not agree to furnish the work and materials required of him by the specifications for more than one house, and if that was destroyed by inevitable accident, just before its completion, he was not bound to build another, or to do anything further under his contract. If the plaintiff was not obliged to make his contribution of work and materials towards the building of a second house, neither was the defendant. The agreement of each to complete the performance of the contract after a building, the product of their joint contributions, had been partly erected, was on an implied condition that the building should continue in existence. Neither can recover anything of the other under the contract, for neither has performed the contract so that its stipulations can be availed of. The case of *Cook* v. *McCabe*, 53 Wis. 250, was very similar in its facts to the one at bar, and identical with it in principle. There the court, in an elaborate opinion, after a full consideration of the authorities, held that the contractor could recover of the owner a *pro rata* share of the contract price for the work performed and the materials furnished before the fire. *Clark* v. *Franklin,* 7 Leigh, 1, is of similar purport.

What are the rights of the parties in regard to what has been done in part performance of a contract in which there is an implied condition that the subject to which the contract relates

shall continue in existence, and where the contemplated work. cannot be completed by reason of the destruction of the property without fault of either of the parties, is in dispute upon the authorities. The decisions in England differ from those of Massachusetts, and of most of the other States of this country. There the general rule, stated broadly, seems to be that the loss must remain where it first falls, and that neither of the parties can recover of the other for anything done under the contract. In England, on authority, and upon original grounds not very satisfactory to the judges of recent times, it is held that freight advanced for the transportation of goods subsequently lost by the perils of the sea cannot be recovered back. *Allison* v. *Bristol Ins. Co.* 1 App. Cas. 209, 226. *Byrne* v. *Schiller*, L. R. 6 Ex. 319. In the United States and in Continental Europe the rule is different. *Griggs* v. *Austin*, 3 Pick. 20, 22. *Brown* v. *Harris*, 2 Gray, 359. In England it is held that one who has partly performed a contract on property of another which is destroyed without the fault of either party, can recover nothing ; and on the other hand, that one who has advanced payments on account of labor and materials furnished under such circumstances cannot recover back the money. *Appleby* v. *Myers*, L. R. 2 C. P. 651. *Anglo-Egyptian Navigation Co.* v. *Rennie*, L. R. 10 C. P. 271. One who has advanced money for the instruction of his son in a trade cannot recover it back if he who received it dies without giving the instruction. *Whincup* v. *Hughes*, L. R. 6 C. P. 78. But where one dies and leaves unperformed a contract which is entire, his administrator may recover any instalments which were due on it before his death. *Stubbs* v. *Holywell Railway*, L. R. 2 Ex. 311.

In this country, where one is to make repairs on a house of another under a special contract, or is to furnish a part of the work and materials used in the erection of a house, and his contract becomes impossible of performance on account of the destruction of the house, the rule is uniform, so far as the authorities have come to our attention, that he may recover for what he has done or furnished. In *Cleary* v. *Sohier*, 120 Mass. 210, the plaintiff made a contract to lath and plaster a certain building for forty cents per square yard. The building was destroyed by a fire which was an unavoidable casualty. The

plaintiff had lathed the building and put on the first coat of plaster, and would have put on the second coat, according to his contract, if the building had not been burned. He sued on an implied assumpsit for work done and materials found. It was agreed that, if he was entitled to recover anything, the judgment should be for the price charged. It was held that he could recover. See also *Lord* v. *Wheeler*, 1 Gray, 282 ; *Wells* v. *Calnan*, 107 Mass. 514, 517. In *Cook* v. *McCabe, ubi supra*, the plaintiff recovered *pro rata* under his contract ; that is, as we understand, he recovered on an implied assumpsit at the contract rate. In *Hollis* v. *Chapman*, 36 Texas, 1, and in *Clark* v. *Franklin*, 7 Leigh, 1, the recovery was a proportional part of the contract price. To the same effect are *Schwartz* v. *Saunders*, 46 Ill. 18, *Rawson* v. *Clark*, 70 Ill. 656, and *Clark* v. *Busse*, 82 Ill. 515. The same principle is applied to different facts in *Jones* v. *Judd*, 4 Comst. 411, and in *Hargrave* v. *Conroy*, 4 C. E. Green, 281. If the owner in such a case has paid in advance, he may recover back his money, or so much of it as was an overpayment. The principle seems to be, that when, under an implied condition of the contract, the parties are to be excused from performance if a certain event happens, and by reason of the happening of the event it becomes impossible to do that which was contemplated by the contract, there is an implied assumpsit for what has properly been done by either of them, the law dealing with it as done at the request of the other, and creating a liability to pay for it its value, to be determined by the price stipulated in the contract, or in some other way if the contract price cannot be made applicable. Where there is a bilateral contract for an entire consideration moving from each party, and the contract cannot be performed, it may be held that the consideration on each side is the performance of the contract by the other, and that a failure completely to perform it is a failure of the entire consideration, leaving each party, if there has been no breach or fault on either side, to his implied assumpsit for what he has done.

The only question that remains in the present case is one of pleading. The defendant is entitled to be compensated at the contract price for all he did before the fire. The plaintiff is to be allowed for all his payments. If the payments are to be treated merely as advancements on account of a single entire

consideration, namely, the completion of the whole work, the work not having been completed, they may be sued for in this action, and the defendant's only remedy available in this suit is by a declaration in set-off. If, on the other hand, each instalment due was a separate consideration for the payment made at the time, then as to those instalments and the payments of them the contract is completely executed, and the plaintiff can recover nothing, and the implied assumpsit in favor of the defendant can be only for the part which remains unpaid.

We are of opinion that the consideration which the defendant was to receive was an entire sum for the performance of the contract, and that the payments made were merely advances on account of it, and that, on his failure to perform the contract, there was a failure of consideration which gave the plaintiff a right to sue for money had and received, and that the like failure of consideration on the other side gave the defendant a right to sue on an implied assumpsit for work done and materials found.

The $38 due from the defendant to the plaintiff cannot be recovered in this action. The report and the pleadings show that the suit was brought under an assignment for the benefit of the insurers, to recover damages for a breach of the contract for the erection of the building, and not to recover the value of the shingles or weights carried away from the ruins.

According to the terms of the report, the ruling being wrong, such order may be made as this court shall direct. A majority of the court are of opinion that the verdict should be set aside, and the defendant be given leave to file a declaration in set-off, if he is so advised, on such terms as the Superior Court deems reasonable.

*Verdict set aside.*