DANIEL B. GILLIS & another *vs.* MARK H. COBE & another.

Suffolk. December 14, 1899. — February 27, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

One who uses a building constructed on his land by a contractor who has failed to obtain an architect's certificate of approval required by his contract does not thereby accept the work or relieve the contractor from his obligation to furnish such certificate.

*Semble,* that one who contracts with a landowner to construct a building and constructs it in good faith but not in accordance with the requirements of his contract may recover from the landowner the amount if any which the building has added to the market value of the land.

In an action for work done and materials furnished in the construction of a building, which the plaintiff had contracted to build but failed to construct to the satisfaction of the architect whose approval was required by his contract, the contract required the plaintiff to ram the cinder filling on which the concrete floor of the

building was laid. When certain heavy tanks for which the building had been designed were put in place there was so great a sinking of the floor that the damage caused thereby was greater than the value of the work and materials furnished by the plaintiff. The cause of the sinking of the floor was not shown nor whether it was due to insufficient ramming of the cinder filling or to the nature of the soil. *Held*, that, in order to recover, the plaintiff must show that the building as it existed had a market value and added to the value of the defendant's land; that the burden was not upon the defendant to show that the sinking of the floor was due to the failure of the plaintiff to perform his contract; and that the plaintiff could not recover the value of his work and materials diminished by such damages as the defendant could prove in recoupment. KNOWLTON, BARKER, & HAMMOND, JJ., dissenting.

CONTRACT for labor done and materials furnished in the construction of an additional storage house for the defendants' brewery at Forest Hills in Boston. Writ dated April 15, 1899.

The case came up on appeal from a judgment of the Superior Court for the defendants, rendered by *Fessenden,* J., upon the report of William J. Forsaith, Esq. as referee. The pleadings, contract and specifications are sufficiently described in the referee's report. That report was as follows:

"This is an action for labor done and materials furnished under a contract to construct an addition to a brewery building in Boston on land of the defendants. There were four counts in the plaintiffs' declaration. The first count was on the special contract, the second count was on an award of arbitrators and the third and fourth counts were on *quantum meruit.*

" Payments were made while the work was being done. The amount of the contract was $3,200. There has been paid on account of work and materials $1,934, leaving a balance of $1,266 unpaid.

" The contract provides that ' All payments shall be made upon the written certificate of the engineers and architects. No payments shall be considered as an acceptance of the work done except the final payment.' [The specifications provided that ' Any disagreement between the owners and the contractor upon any matter arising from these specifications or drawings of the work required, shall be decided by the engineers and architect whose decision shall be final and binding on both parties.' They also provided that] ' The building will not be accepted until everything has been completed according to the true intention of the plans and specifications. Payments to be made only upon a

written order from the architects, as the work progresses. No order will be considered an acceptance of the work on which it is given. Only an order for the final payment shall be considered as an acceptance of the work.'

" C. F. Hettinger, the architect, was an architect of experience in this kind of work, and he had the general oversight of the work. Only one certificate of the architect was procured. This was for $2,080, on which $1,750 was paid, leaving a balance due on the amount of the certificate of $330. From this balance there should be deducted $184, the amount paid by the defendants to Smith Bros., for iron work as agreed by the parties.

" The evidence shows that the plaintiffs have performed the work, and furnished the materials required by the plans and specifications, except that they have failed to put in any of the iron rods except one, which by the plans and specifications were to be furnished and put in by the plaintiffs, running from side to side of the building and across the corners, through the concrete, and the one they did put in was placed under and not through the concrete.

" I am of opinion that if the rods had been placed as required by the plans and specifications through the concrete, they would have tended to strengthen the concrete floor, but do not think that the absence of the rods was the cause of the floor sinking.

" The defence offered in this case is: To the first, third and fourth counts that the plaintiffs have failed to procure and furnish the certificate of the architect for the balance of the claim, as required by the contract, and that such certificate was indispensable to create a liability on the part of the defendants. And that they have improperly and negligently performed the work in the matter of ramming the cinder filling to be placed under the concrete surface by the plaintiffs, so that the floor has sunk from the weight of the heavy tanks placed upon it, causing great damage to the defendants, far in excess of the amount of the plaintiffs' claim, and in failing to place the iron rods as required, and the defendants seek to recoup in this action such damage. And to the second count, that there was no award of arbitrators."

" The concrete floor made by the plaintiffs was used by the defendants to place on it large tanks, of about thirty tons weight each, when filled with beer. The floor sunk by reason of the

heavy weight of these tanks, and I find that the damage to the defendants by reason of the sinking of the floor is in excess of the amount of the plaintiffs' claim.

" When the building was completed and the floor laid apparently according to the plans and specifications, excepting the failure to put in the iron rods required, this being known to the defendants, the defendants commenced putting in the tanks, taking about four days to put in a tank. When the first tank was placed and filled with water, the floor under it began to sink. Another was placed and filled and it began to sink. The defendants continued putting in and filling the tanks, twenty-two in all, until the space was filled. Some time after all the tanks had been placed and filled and it was discovered that the floor had sunk, the defendants made a claim against the plaintiffs for damages for the sinking of the floor. The sinking of the floor varies in depth, in some places to the depth of eighteen inches. The floor is in a very bad condition for the purpose for which it is to be used, as the waste which comes from the tanks when cleaned, and the water used for cleaning the tanks and the floor, will not run off through cesspools in the floor communicating with drains. This floor when left by the plaintiffs was, and was intended to be, pitched towards these cesspools, so that the waste from the tanks and the water used for cleaning purposes would run off through the cesspools and drains. This cleansing process is very necessary to the successful manufacture of beer, and two extra men are required to be employed by the defendants to hoe and brush up to the cesspools this waste and water.

" I am, on the evidence, unable to determine to what this sinking of the floor is chargeable, whether to insufficient tamping or ramming and wetting of the cinder filling, which the plaintiffs were required to do by the contract, or to the spongy, swampy condition of the soil, foundation for the cinder filling, for which the plaintiffs are not chargeable.

" There was no fraud or collusion between the architect and the defendants which caused him to withhold the certificate, and the retention by the architect of the certificate was, if wrong, from error of judgment.

" A change was made in the contract by substituting cinders for sand for filling, agreed to by all parties, and the evidence of

all the witnesses was that cinders were quite as good, if not better, than sand.

"The contract called for a bond from the plaintiffs for $3,000. This was subsequently changed to $1,000.

"I find and report to the court that the plaintiffs should not maintain their action on the *first count*, that on special contract, for the reason that they fail to procure and furnish the architect's certificate required by the contract, which was a condition precedent to create a liability on the part of the defendants.

"I also find that the plaintiffs should not maintain their action on the *second count*, on an award of arbitrators, as no award has ever been rendered by arbitrators.

"I find on the *third* and *fourth counts*, both on *quantum meruit*, that the plaintiffs have performed the work and furnished materials in the construction of the building called for by the contract in good faith, and that they are of value to the defendants, and that they are using the same. And that the acts of the defendants in putting in tanks as above stated constituted an acceptance of the work, and that such work and materials are of the value of $1,266.

"That the defendants should be allowed to recoup for damage suffered by them for the failure of the plaintiffs to put in iron rods in the sum of two hundred dollars.

"And I report this case for the determination of the court as to whether the acts as above stated of the defendants in putting in the tanks constituted such an acceptance as dispensed with the necessity of the plaintiffs furnishing the architect's certificate, or whether this action can be maintained on the common counts for work and labor done and materials furnished, without the furnishing of the architect's certificate.

"If the court is of opinion that this action can be maintained on the foregoing statement, then I find and report that the defendants owe the plaintiffs the sum of $1,066 and interest on said sum from the fifteenth day of May, 1898."

The judgment of the Superior Court appealed from was as follows:

"Construing the referee's finding as to acceptance, on the last page of the report, to be a ruling of law — for if it is a finding of fact upon the evidence in the case there is no occasion to re-

port the question of law — the court rules that the mere putting in of the tanks would not as a matter of law constitute an acceptance. And under all the facts found and reported by the referee, the court rules that the plaintiffs, having failed to procure the written certificate or order from the engineer or architect, cannot recover. Judgment for defendants."

The case was argued at the bar in December, 1899, and afterwards was submitted on briefs to all the justices.

*M. F. Farrell*, for the plaintiffs.

*E. I. Baker*, for the defendants.

LORING, J. 1. The first question submitted to the court by the referee is whether the defendants' act of putting in the tanks constituted an act of acceptance which dispensed with the necessity of the plaintiffs' furnishing the architect's certificate.

The plaintiffs contend that this question does not arise in this case, because it is nowhere provided in the contract that their right to recover the contract price depends upon their securing a certificate from the architect. Though the provisions of this contract are not as explicit as building contracts usually are in this respect, yet, on a fair construction of its terms, we think that the plaintiffs' right to recover does depend upon their producing a certificate from the architect. In the specifications, which are made part of the contract, there is this provision : " Payments to be made only upon a written order from the architects, as the work progresses. No order will be considered an acceptance of the work on which it is given. Only an order for the final payment shall be considered as an acceptance of the work." This clause, taken in connection with the two following clauses of the contract, must be taken to make the payment of the contract price dependent upon the architect's giving his certificate : " Any disagreement between the owners and the contractor upon any matter arising from these specifications or drawings of the work required, shall be decided by the engineers and architect, whose decision shall be final and binding on both parties." " All payments shall be made upon the written certificate of the engineers and architects." We are therefore of opinion that this question does arise.

Further, we are of opinion that the act of the defendants in using the building when the plaintiffs stopped working on it

was not an acceptance of it. By the express terms of the contract, " Only an order for the final payment shall be considered as an acceptance of the work." The building became the defendants' property, as it was affixed to their land; when the plaintiff stopped working on it and the architect refused to give a certificate that it was constructed in accordance with the requirements of the contract, the defendants were not bound to remove the building, nor were they bound, so long as the building stood on their land, to abstain from using what was their own. The use of the building, therefore, was not an acceptance of it under the contract; nor was it an acceptance of it apart from the contract for the purpose of a recovery under the rule of *Hayward* v. *Leonard*, 7 Pick. 181; there is no question of acceptance in case of a recovery on that ground; that rule depends upon other considerations.

2. The second question is whether a recovery can be had in this case on the common counts, without furnishing the architect's certificate. In the contract which the parties in this case have made, they did not go so far as to negative any recovery by the contractors, in case the architect refused to give his certificate; in the absence of such a negative stipulation in the contract, the failure to secure the architect's certificate cannot be a bar to the plaintiffs' right to recover on the principle of *Hayward* v. *Leonard*, if they are otherwise entitled to recover on that ground. *Fitzgerald* v. *Allen*, 128 Mass. 232. *Atkins* v. *Barnstable*, 97 Mass. 428. *Reed* v. *Scituate*, 7 Allen, 141, 144. *Reed* v. *Scituate*, 5 Allen, 120. *Walker* v. *Orange*, 16 Gray, 193. *Snow* v. *Ware*, 13 Met. 42. It is not necessary to determine whether the rule enforced in *Hayward* v. *Leonard* rests on general principles of justice, or is derived by construction from the fact that there was no intention to render the services gratuitously.

3. The third question submitted by the referee is, whether the plaintiffs can recover on the doctrine of *Hayward* v. *Leonard* on the facts found by him in the award.

It is contended on behalf of the plaintiffs that the referee has not reported this question to the court. The referee concludes his award with the following statement: " If the court is of opinion that this action can be maintained on the foregoing statement, then I find and report that the defendants owe the

plaintiffs the sum of $1,066." The plaintiffs contend that this is nothing more than a reference to the two questions of law which, by the preceding paragraph, were referred to this court. But that would not be a fair construction of these words had they stood alone; and they cannot be construed as if they stood alone, for, if nothing more than that had been intended by the referee, there could have been no reason for the extended statement of facts contained in the award. Though the statement of facts in an award is not of itself enough to hold that all questions of law arising on those facts are submitted to the court, — *Rogers* v. *Mayer*, 151 Mass. 279, — yet, on a fair construction of this award as a whole, we are of opinion that the referee submitted to the court the question of the plaintiffs' right to recover on the common counts on the facts found by him. See *Fairchild* v. *Adams*, 11 Cush. 549, 555.

The plaintiffs' second contention in this connection is that the following findings of the referee entitle them to a recovery on the common counts: (1) " The evidence shows that the plaintiffs have performed the work, and furnished the materials required by the plans and specifications, except that they have failed to put in any of the iron rods except one, which by the plans and specifications were to be furnished and put in by the plaintiffs, running from side to side of the building and across the corners, through the concrete, and the one they did put in was placed under and not through the concrete." (2) " I find on the third and fourth counts, both on *quantum meruit*, that the plaintiffs have performed the work and furnished materials in the construction of the building called for by the contract in good faith, and that they are of value to the defendants, . . . and that such work and materials are of the value of $1,266."

These findings cannot be taken, on any fair construction of the award, to be a finding that the plaintiffs complied with the contract in the construction of the building in all particulars except in putting in the rods. There is a specific finding in the award to the effect that the plaintiffs did not prove that they complied with the contract requirements in laying the cinder filling, on which the concrete floor which gave way and sank, when put into use was to, and does, rest. This finding is as follows: " I am, on the evidence, unable to determine to what

this sinking of the floor is chargeable, whether to insufficient tamping or ramming and wetting of the cinder filling, which the plaintiffs were required to do by the contract, or to the spongy, swampy condition of the soil, — foundation for the cinder filling, — for which the plaintiffs are not chargeable." This specific finding cannot be taken to have been annulled by the general findings; these general findings must be taken to amount to nothing more than a finding that the building was erected by the plaintiffs, and erected in good faith.

The plaintiffs further contend that they are entitled to the fair value of the structure, viewed with reference to the labor and materials which produced it, and that when they have proved the value of their labor and materials in the usual way, according to regular rules, they are entitled to that amount unless the defendants go forward and prove by way of recoupment that the plaintiffs have committed a breach of their contract, that they, the defendants, have suffered damages therefrom, and what the amount of those damages is.

Where a contractor does work and furnishes materials under a special contract, he has no right to recover the value of the work plus the value of the materials under a *quantum meruit*, but is limited to the right to be paid for them specified in the contract; no suit can be maintained by him on the common counts until the contract is fully performed, and then only to recover the contract price. *Peirce* v. *Fellows*, 1 Dane Abr. 222. *Lovell* v. *Earle*, 127 Mass. 546.

If he resorts to a recovery under the rule in *Hayward* v. *Leonard*, because, being in default in the performance of the contract, or, what is the same thing, because, being unable to prove that he did perform the contract, he has no rights under it, he has not the same right to recover for the value of the work done and materials furnished by him, that a person has, who has done work and furnished materials as he has been requested to do. In the latter case, it is immaterial whether the result of his work is of any value to the defendant or not. *Austin* v. *Foster*, 9 Pick. 341. *Stowe* v. *Buttrick*, 125 Mass. 449. *Angus* v. *Scully*, 176 Mass. 357. But one who has done work under a special contract, and resorts to a recovery under the principle of *Hayward* v. *Leonard*, recovers on the ground, and only on the ground,

that the result of his work is of some benefit to the defendant; he comes into court admitting that he has not done what he agreed to do and that he cannot hold the defendant on his promise to pay him the contract price; more than that, he admits that the part, which he has failed to perform, is one, that so far goes to the essence of the contract, that it is a condition precedent to a recovery by him on the contract; for, if the part which he agreed to perform, and did not perform, was of slight importance, it is not a condition precedent; he can recover the contract price without performing it, and the only advantage which the defendant can take of it is by way of recoupment, or by a cross-action, in which the burden is on him, the defendant, to prove the damage he has suffered from its non-performance. The only ground, on which a plaintiff, who resorts to a recovery under the principle of *Hayward* v. *Leonard*, is entitled to recover anything is, that, though, so far as his contract rights are concerned, he is entirely out of court, yet it is not fair that the defendant should go out of the transaction as a whole with a profit at his, the plaintiff's, expense, and therefore if the structure, which, for the purposes of a recovery on this ground, he necessarily admits does not come up to the contract requirements in essential particulars, is, nevertheless, a thing of some value, the defendant ought to make him compensation therefor. That such is the ground on which a recovery can be had in such a case was laid down in the original case of *Hayward* v. *Leonard*, 7 Pick. 181, and has been repeated in the subsequent decisions. *Phelps* v. *Sheldon*, 13 Pick. 50, 52. *Adams* v. *Nichols*, 19 Pick. 279, 280. *Higby* v. *Upton*, 3 Met. 409, 410. *Bassett* v. *Sanborn*, 9 Cush. 58, 63. *Walker* v. *Orange*, 16 Gray, 193. *Reed* v. *Scituate*, 5 Allen, 120. *Reed* v. *Scituate*, 7 Allen, 141, 144. *Cardell* v. *Bridge*, 9 Allen, 355, 356. *Atkins* v. *Barnstable*, 97 Mass. 428, 429, 430. *Powell* v. *Howard*, 109 Mass. 192. *Cullen* v. *Sears*, 112 Mass. 299, 308. *Fitzgerald* v. *Allen*, 128 Mass. 232, 234. *Blood* v. *Wilson*, 141 Mass. 25, 27.

It had been held by this court twelve years before *Hayward* v. *Leonard* was decided that there could be no recovery on the doctrine afterwards stated at length in that case, if the result of the plaintiff's misdirected work was not a thing of value. That was the case of *Taft* v. *Montague*, 14 Mass. 282; in that case, the

plaintiff had agreed to construct a bridge for the town of Montague, but had failed to comply with the requirements of the contract in the construction of the abutments. The bridge was afterwards carried away by a flood. The presiding justice instructed the jury that "if they were satisfied from the evidence that the plaintiff had failed to perform his special contract, their verdict should be for the defendants; and that, under the circumstances of this case, nothing was to be allowed under the count for the *quantum meruit*, on the ground that the evidence in the case would not warrant a recovery on that count; inasmuch as the defendants had not received any benefit from the ill-directed labor of the plaintiff." That ruling was confirmed by this court.

It is plain, therefore, that the plaintiff who seeks a recovery under the principle of *Hayward* v. *Leonard* for work done under a special contract, does not recover on the same ground as that on which a plaintiff recovers, who has done work, as he has been requested to do. So far as his case travels on that ground, he is out of court; his sole claim to be paid anything is that if he is not paid, the defendant will profit at his expense; until he has proved that the defendant will in that case profit at his expense, he has not made out a *prima facie* case to be paid anything, and until he has proved how much that profit will be, his *prima facie* case is not complete. When the fact appears in evidence that the work for which money is sought was done under a special contract, and that the plaintiff cannot recover under the special contract, but still seeks a recovery, there is no question of the value of his work and materials, proved in the usual way, and he does not make out a *prima facie* case by proving their value according to regular rules; to make out a case for recovery for such work and materials so furnished, he must prove how much the result of his work had benefited the defendant, he must prove what the fair market value of the thing produced by his misdirected work is, and, until he has done that, he has not made out even a *prima facie* case on which he is entitled to recover anything.

It is immaterial at what stage of the trial the fact appears that the work for which a recovery is sought on a *quantum meruit* was work done under a special contract, which the plaintiffs have failed to prove was performed; when that fact does appear,

the contractor who seeks a recovery by reason of such work has the burden of proving what the fair market value of the result of his misdirected work is and unless, and until, he proves that, he does not show himself to be entitled to anything. In such a case, as in all cases where a plaintiff sues on a *quantum meruit*, there is no question of recoupment; the only question is, How much does the plaintiff deserve, under all the circumstances, and this arises under the general issue.

If authority is needed for the general proposition that in case work is improperly done, the plaintiff has not the same right to recover the value of his work plus the value of his materials, that he has when it is properly done, and that what he is entitled to in such a case is the value of the thing produced by his work, it may be found in *Farnsworth* v. *Garrard*, 1 Camp. 38; *Hill* v. *Featherstonhaugh*, 7 Bing. 569; *Huntley* v. *Bulwer*, 6 Bing. N. C. 111; *Bracey* v. *Carter*, 12 A. & E. 373; *Thornton* v. *Place*, 1 Mood. & Rob. 218; *Denew* v. *Daverell*, 3 Camp. 451; *Cutler* v. *Close*, 5 C. & P. 337; *Duncan* v. *Blundell*, 3 Stark. 6. *Farnsworth* v. *Garrard* was cited with approval in *Snow* v. *Ware*, 13 Met. 42.

The contention of the plaintiffs in this connection comes to this: While a plaintiff who has done work under a special contract, when suing on the contract, has the burden of proving that he has complied with its requirements, yet, on his failing to sustain that burden he can, by resorting to a count of *quantum meruit*, and by proving the value of the work done by him (which he failed to prove was a performance of what he agreed to perform), shift the burden of proof and throw on the defendant the burden of proving that he committed a breach of the contract; and that, in this way, he can entitle himself to the value of that work to the same extent as he would have been entitled had that work been done in the manner in which the defendant requested to have it done; and to recover that value unless the defendant goes forward and, by way of recoupment, cuts that amount down by proving that he, the plaintiff, committed a breach of the contract under which the work was done, and that he, the defendant, has suffered damages from that breach and proves the amount of those damages.

There are no cases in which the amount of the compensation

to which a plaintiff who resorts to a recovery under the principle of *Hayward* v. *Leonard* is entitled, has received deliberate consideration. But if the sole ground of his being entitled to anything is that were he not paid something the defendant would profit at his expense, although his claim is without merit so far as rights under the contract are concerned, it is clear that the amount which should be paid the plaintiff is the amount by which, were no payment made, the defendant would profit at his expense; that is to say, the amount which represents the fair market value of the structure which, against the wishes of the defendant, has been put upon his land.

And there are several cases in which this court has either stated or recognized that such is the amount to be paid in such a case. In *Cardell* v. *Bridge*, 9 Allen, 355, 356, a ruling that the contractor in such a case " could recover only the amount by which he had benefited the defendant " was held to be correct. In *Snow* v. *Ware*, 13 Met. 42, 46, 50, the jury were instructed that in such " case the rule of damages would be the value of the work to the defendants," and this instruction was held to be correct by this court. To the same effect, see *Cullen* v. *Sears*, 112 Mass. 299, 308; *Fitzgerald* v. *Allen*, 128 Mass. 232, 234. There is nothing in any opinion, in this Commonwealth, at any rate, to the contrary.

There are doubtless cases like *Atkins* v. *Barnstable*, 97 Mass. 428, where the jury has been instructed to inquire into the value of the plaintiff's work and materials. When the work done is deficient only in that the work called for by the contract is not completed, and the omitted part can be added after, as well as during, construction, there is no difference between the value of the work done and the value of the thing produced by the deficient work, and in such a case, such an instruction is not objectionable.

But the case at bar is not such a case. In this case the plaintiffs had to resort to the common counts, because they did not secure the architect's certificate, and because they failed to prove that they complied with the contract requirements in putting in the cinder filling on which the floor rested which gave way when put in use. It does not appear in the contract or in the specifications how many " tie-rods " were to be put through the concrete

floor; it doubtless does appear on the plans which are referred to in, and made a part of, the contract; but these plans have not been submitted to us. The referee made in this connection the following finding: "I am of opinion that if the rods had been placed as required by the plans and specifications through the concrete, they would have tended to strengthen the concrete floor, but do not think that the absence of the rods was the cause of the floor sinking." So far as the omission of all but one of these rods is concerned, the plaintiffs could, without much doubt, have recovered the contract price on the ground that this detail was not a matter going to the essence of the contract and, for that reason, an exact compliance with it was not a condition precedent; but, on the facts before us, no final decision on that point can be made.

The case at bar, then, is a case where the plaintiffs have not satisfied the architect that they did their work as required by the contract, as by the terms of the contract they had to do before they were entitled to be paid for it, and where it is expressly found by the referee that, "There was no fraud or collusion between the architect and the defendants which caused him to withhold the certificate, and the retention by the architect of the certificate was, if wrong, from error of judgment." And it is a case where the plaintiffs have failed to prove that they have performed their contract in constructing the filling on which the floor rests which has given way, and where, by the finding of the referee, "the damage to the defendants by reason of the sinking of the floor is in excess of the amount of the plaintiffs' claim." The sinking of the floor is, without doubt, a matter of essential importance. On the findings of the referee, it is left undetermined whether the floor would or would not have sunk had the cinder filling been put in as the contract provided. The question is, What sum is to be paid to the plaintiffs who erected the building under a contract which they have failed to prove they performed in that portion which may have been the cause of the building being of little or no value, and when the plaintiffs did not satisfy the architect that they performed the contract in that connection; it is apparent from what already has been said that the sum to be paid them is the fair market value of the building as it now exists, and, until they have proved what that value is, they are not entitled to recover at all.

It is not correct to say that the plaintiffs are in this way made liable for the consequential damages caused by the sinking of the floor in cancellation of a sum otherwise due them, without proving that they are to blame for it. In this case, there is no sum otherwise due the plaintiffs. Unless by a happy accident it turns out that the building produced by their work has added to the value of the defendants' land, nothing is due to them. They have failed to prove that they complied with the contract in the construction of the part of the building which has given way, and in satisfying the architect of that fact; that being so, nothing is due them at all, so far as the terms of the contract are concerned; they have no claim to be paid the contract price, for they have failed to prove that they complied with the requirements of the contract in matters going to the essence of it; they have no claim to the value of the work plus the value of the materials, for the work was done and the materials were furnished under a special contract, and no payment is due for them except upon the terms of the special contract. Their only claim is that it is not fair that the defendants should profit at their expense, and that, for that reason if the building which is the result of their labor has added to the value of the defendants' land, the defendants should make them compensation therefor and to that extent. That being the sole ground on which the plaintiffs are entitled to anything, the burden does not lie on the defendants to prove that the thing which caused the floor to sink and the building to be of no market value (if it is of no market value), is a thing for which the plaintiffs were to blame. The plaintiffs' case is that the building which they have placed upon the land of the defendants against their wishes has added to the value of the defendants' land; if it does not, they have no rights in addition to their rights under the contract, and it is of no consequence why it is that the building does not add to the value of the land.

The finding of the referee that the work and materials furnished by the plaintiffs in the construction of the building "are of the value of $1,266" is not a finding to the effect that the building, as it is, is worth $1,266. It is apparent that the referee did not in this case proceed upon the true principles of law upon which the case should have been tried; and his findings

may have been influenced by the connection in which they were made. For example, his findings that the plaintiffs failed to prove a compliance with the contract in putting in the cinder filling, and that the damages suffered from the sinking of the floor are greater than the plaintiffs claim, were apparently made in passing upon a supposed question of recoupment. Whatever the latter finding, if followed out to its logical conclusion, may result in, we think, for the reasons already given, that the case should not be ultimately disposed of on these findings, or either of them but that the whole case should be tried anew, and for that reason the appeal should be sustained although if the case had to be disposed of on the findings made by the referee the judgment would be affrmed.

There is nothing in the plaintiffs' contention that they are freed from all responsibility for the sinking of the floor because there was a deviation from the contract in the substitution of cinders for sand in the filling on which the floor was to rest. The specifications, in terms, provide for " alterations, additions or omissions to or from the work hereinafter specified or shown on drawings, during the progress of the work and the same shall be agreed to by the contractor." And it was found by the referee that : " A change was made in the contract by substituting cinders for sand for filling, agreed to by all parties, and the evidence of all the witnesses was that cinders were quite as good, if not better, than sand."

Neither is there anything in their contention that they are entitled to $146, in any event, on the ground that as the work progressed the architect gave a certificate for $2,080, on which $1,934 was paid, leaving a balance of $146 unpaid. The short answer to this contention is, that the referee has found that the plaintiffs were guilty of a breach of the contract in not putting in the iron rods through the concrete, and that the damage suffered by the defendants from it was $200. The defendants' right to set off this amount in this action is not affected by the right which they otherwise would have to sue the plaintiffs on the bond given by them to faithfully perform the work. As this claim is disposed of in this way, it is not necessary to express any opinion upon the question whether the architect's refusal to accept the work did not end the right which the certificate,

given while the work was in progress, would otherwise give the plaintiffs, under the provisions of the contract that "No order will be considered an acceptance of the work on which it is given. Only an order for the final payment shall be considered as an acceptance of the work."

It is perhaps well to add that, if it appears that the contract is a beneficial one to the landowner, the plaintiffs are not entitled to recover any part of the margin of benefit which the landowner secured by the making of the contract when they resort to a recovery for the value of the thing produced by their misdirected work. In such a case, the contractor is entitled to the value of the building as it is, in the light of the landowner's right to have the building built, and properly built, for the contract price. If, for example, the landowner secured by his contract the erection for $2,000 of a building worth $3,000, and the plaintiff, in erecting the building, fails to comply with the contract in matters going to the essence of the contract, and the building, erected as it is erected, is worth $2,500, the plaintiff is not entitled to recover $2,500; all that he is entitled to recover is twenty-five thirtieths of $2,000. *Hayward* v. *Leonard,* 7 Pick. 181, 187. *Gleason* v. *Smith,* 9 Cush. 484, 486. *Cullen* v. *Sears,* 112 Mass. 299. *Thornton* v. *Place,* 1 Mood. & Rob. 218.

The appeal from the judgment entered by the Superior Court for the defendant must be sustained.          *So ordered.*

KNOWLTON, J. I regret that I am unable to agree with the majority of the court in the decision of this case. I am of opinion that on the referee's report judgment should be entered for the plaintiffs. The referee has found that they acted in good faith under the contract, and that they " have performed the work, and furnished the materials required by the plans and specifications, except that they have failed to put in any of the iron rods except one, which by the plans and specifications, were to be furnished and put in by the plaintiffs, running from side to side of the building and across the corners, through concrete, and the one they did put in was placed under and not through the concrete." Their failure to put in these rods prevents their recovery under the contract, but upon the facts found it leaves them to recover on a *quantum meruit* the fair value of the work called

for by the contract, not exceeding the contract price, less such deduction as should be made for their failure to put in the rods. The referee has found that $200 is a proper deduction to be made on this account, and has expressly found that without this deduction the fair value of the work and materials furnished by the plaintiffs, which have not been paid for, is $1,266, which is the contract price. This makes a *prima facie* case in favor of the plaintiffs. Unless there is something else in the report which controls these findings, it seems plain that they are entitled to recover $1,066 and interest, according to the report of the referee.

In reference to this aspect of the case it appears by the report that the defendants contended at the hearing as follows : " That they [the plaintiffs] have improperly and negligently performed the work in the matter of ramming the cinder filling to be placed under the concrete surface by plaintiffs, so that the floor has sunk from the weight of the heavy tanks placed upon it, causing great damage to defendants, far in excess of the amount of plaintiffs' claim, and in failing to place the iron rods as required, and the defendants seek to recoup in this action such damage." The language of the defendants' answer referring to this subject is : " great damage resulted to the defendants ; whereby the defendants are entitled to recoup the damage so sustained by them." The referee finds as follows : " The concrete floor made by the plaintiffs was used by the defendants to place on it large tanks, of about thirty tons weight, each, when filled with beer. The floor sunk by reason of the heavy weight of these tanks, and I find that the damage to the defendants by reason of the sinking of the floor is in excess of the amount of the plaintiffs' claim. When the building was completed and the floor laid apparently according to the plans and specifications, excepting the failure to put in the iron rods required, this being known to the defendants, the defendants commenced putting in the tanks, taking about four days to put in a tank. When the first tank was placed and filled with water, the floor under it began to sink. Another was placed and filled and it began to sink. The defendants continued putting in and filling the tanks, twenty-two in all, until the space was filled. Some time after all the tanks had been placed and filled and it was discovered that the floor had sunk, the defendants made a claim against the plaintiffs for

damages for the sinking of the floor. The sinking of the floor varies in depth, in some places to the depth of eighteen inches."

The referee's finding on this claim for damages is in these words: " I am, on the evidence, unable to determine to what this sinking of the floor is chargeable, whether to insufficient tamping or ramming and wetting of the cinder filling, which the plaintiffs were required to do by the contract, or to the spongy, swampy condition of the soil, — foundation for the cinder filling, — for which the plaintiffs are not chargeable."

The rule in Massachusetts, and in most of the other American States, permits one who has erected for another a structure which has become a part of the real estate, under a contract which in good faith he endeavored to perform, and which he brought substantially but not entirely to completion, to recover on a *quantum meruit* for labor and materials. The reason of this rule is that ordinarily the structure will be of value to the land-owner, and, if there has been an honest effort to perform the contract, and the owner has obtained that which conforms generally although not exactly to the contract, it is equitable that he should pay for it what it is fairly worth, except as the price should be modified by the terms of the contract so far as the contract is advantageous to him. Justice to the defendant in a case brought to recover for such work requires that he should not be made to pay for it at a rate higher than that which the contract calls for, and justice to the plaintiff requires that he should have the fair value of his labor and materials, unless the price should be diminished because he contracted to do the work for less than its value. Of course, if by his breach of the contract he has caused damage to the defendant, that may be the foundation for a claim in recoupment from the amount otherwise payable.

Whether the investment in the building turns out profitably or unprofitably to the owner, is of no consequence. The value of the building to the owner, apart from other considerations, cannot affect the price to be paid. If, through bad management, miscalculation or misfortune for which the builder is not responsible, the owner is unable profitably to use the building for the purpose for which it was intended, this cannot be shown to diminish the sum to be recovered. A building may be so

constructed for use in a particular kind of business that it would be worth but little for any other use, and before it is completed the business may become unprofitable, and the building be of little value on that account. No one will contend that in such a case the recovery of the builder is to be limited by the value of the building to the owner. If a house is erected by a contractor on foundations provided by the owner, and the foundations settle so that it becomes unsafe and must be taken down, it will hardly be contended that the *quantum meruit* to be recovered by the contractor who has substantially performed his contract but has fallen short of complete performance of it is to be reduced to nothing because the building is worth little or nothing to the owner. See *Austin* v. *Foster,* 9 Pick. 341, 345.

In the present case the fact that the value of the building is greatly diminished by the settling of the floor, unless something more is shown, does not affect the value to be paid on a *quantum meruit* for labor and materials as ascertained by the referee, applying the contract price. The rule in such cases, as I understand it, is simple. The plaintiff must declare in *indebitatus assumpsit,* and not on the special contract. The builder is to have the fair value of the structure, viewed in reference to the labor and materials which produced it, except so far as the price may be reduced by applying a contract favorable to the owner, or by allowing a recoupment of damages, if the owner has suffered damages from a breach of the contract. In *Cullen* v. *Sears,* 112 Mass. 299, 308, the rule is stated by Mr. Justice Gray as follows: When under a count in *indebitatus assumpsit* the plaintiff " seeks to recover payment for building a house according to a special contract, and proves that he has substantially performed it, except in some comparatively slight deviations, the measure of damages is the contract price, deducting what the house was worth less to the defendant by reason of such deviations." I know of no decision of our court in conflict with this rule. I understand the findings of the referee to bring the case within this rule, the only deviations appearing being the failure to put in the rods. He has expressly found that in his opinion the failure to put in the rods did not cause the settling of the floor, and the allowance of $200 for that omission covers the only particular in which the plaintiffs

appear to have fallen short of their obligation. I do not understand that the plaintiffs admit or that the evidence shows any misdirected work which had anything to do with the settling of the floor. They recover on a *quantum meruit* instead of under the contract because they failed to put in the rods. There is a general finding in their favor as to everything else.

In my view the case turns on the question, How far must a plaintiff go in a suit of this kind to make a *prima facie* case? Undoubtedly the burden is on him to prove the fair value of that which he has done and furnished, and to show the value in reference to the contract price if that price is favorable to the defendant; but when he has done this in the usual way, and when the contract is invoked as a foundation for a claim of damages, to relieve the defendant from payment of the price agreed to be paid for that which was done, I understand that the defendant must introduce preponderating evidence to establish his claim before it can be used affirmatively to offset and cancel a substantial claim for labor and materials previously proved by the plaintiff. The opposite view seems to me to overlook the fact that we are no longer proceeding under a count on a special contract which requires proof of performance of the contract according to its terms as a foundation for recovery, but are concerned only with a question of value under one of the common counts, and the contract can be invoked in favor of the defendant only as to the rate at which the labor and materials are to be paid for, and as a foundation for a recoupment of damages, if he claims damages for a breach of the contract.

In the present case, the question being what is the fair value of the structure which the plaintiffs erected, estimating it according to the contract, the only inference of fact from all the findings seems to me to be that it is worth the sum stated by the referee. The only alternative is to hold that the findings have no tendency to show any value in that which the plaintiffs did and furnished under the contract. On a mere question of value, when damages are claimed for alleged breaches of the contract in sundry particulars, a plaintiff certainly is not bound to go forward and negative every such claim at the outset. To require this of him as the only way of preventing the allowance of the claims against him is to defeat the very purpose of the

rule which allows a recovery on a *quantum meruit*, and to apply to this equitable form of recovery the strict rule applicable to a count on a special contract.

If the defendants in this case had shown that the plaintiffs neglected properly to wet and ram the ashes, and thereby caused the defendants' loss, it doubtless would have appeared that the cost of the additional work necessary properly to do this would have been trifling, while the damage is very great. The damage which the defendants seek to have allowed does not directly affect the value or price of the work itself which the plaintiffs did, but it is an independent claim of much greater magnitude than the price of the alleged defective work which is said to have caused it. It stands by itself, and in my judgment it can be allowed for the purpose of wiping out the plaintiffs' claim only when supported by evidence. This is the express statement or implication of all the cases that I have seen in which the subject is considered. See *Britton* v. *Turner*, 6 N. H. 481; *Gallagher* v. *Sharpless*, 134 Penn. St. 134; *Trowbridge* v. *Barrett*, 30 Wis. 661; *Ætna Iron & Steel Works* v. *Kossuth County*, 79 Iowa, 40; *Dermott* v. *Jones*, 2 Wall. 1. These cases refer to a defence of this kind as "recoupment," just as the defendants in this case say in their answer that they are "entitled to recoup the damages so sustained by them." In general a claim for recoupment not only must be proved by the defendant, but must be specially pleaded. *Lamson & Goodnow Manuf. Co.* v. *Russell*, 112 Mass. 387. *Hodgkins* v. *Moulton*, 100 Mass. 309. *Jackman* v. *Doland*, 116 Mass. 550. *Wentworth* v. *Dows*, 117 Mass. 14. *Harrington* v. *Stratton*, 22 Pick. 510. 19 Encyc. of Pl. & Pr. 738, 743, and cases cited. In *Bowker* v. *Hoyt*, 18 Pick. 555, 558, and in *Bee Printing Co.* v. *Hichborn*, 4 Allen, 63, 66, the language of the opinion plainly implies that similar damages are to be proved by the defendant.

The finding of the referee, as I understand it, is in substance this: "I find that the work and materials have been furnished as required by the contract, except the iron rods, for which I make a deduction, and I find that the fair value of the whole at the contract price, with a deduction for previous payments and for the omission of the rods, is $1,066. The defendants show that their building is greatly diminished in value by the settling of the floor. They contend that the plaintiffs failed properly to

ram and tamp the ashes; they also contend that this failure caused the settling. These contentions are denied. I am unable to determine whether there was any failure of the plaintiffs properly to ram the ashes, and, if there was any such failure, I am unable to determine whether it caused the loss which the defendants seek to use in diminution of the price otherwise to be paid. So far as I can see, it seems as likely that the settling was caused by the defendants' own acts in putting upon imperfect foundations tanks which together weighed, when full, six hundred and sixty tons, as that it resulted from any default of the plaintiffs."

Suppose the referee had found more favorably to the defendants than he has found, and had concluded that the plaintiffs had not rammed the ashes quite so much as the contract required, and had said that according to ordinary rules this omission would diminish the value of the work but a trifling sum, and had added that he was unable to say whether this or the poor foundation was the cause of the settling of the floor, is there any principle of law under which the large damage for the settling of the floor could be charged against the plaintiffs in cancellation of the sum otherwise due them, merely because it was not shown which of the parties was the culpable cause of the damage, and because the plaintiffs had not performed their contract quite perfectly in regard to the ashes? Under such findings as these, ought it not to be held that the plaintiffs have made a *prima facie* case, not to recover under a count on a special contract, but to recover the value of that which they have furnished, under a count in assumpsit for labor and materials? The opposite view seems to me to result in this: That in such a suit, whenever a defendant alleges that he has suffered damage from a failure of the plaintiff to perform a contract in specified particulars, the plaintiff must go forward with affirmative evidence and disprove every allegation charging him with responsibility for loss. If he fails to do this, all the losses of the owner in connection with the construction of the building may be laid at his door, and, without proof of his accountability, charged against him to offset the sum which is otherwise shown to be due him.

I am authorized to say that Mr. Justice BARKER and Mr. Justice HAMMOND concur in this opinion.