EDWARD J. VICKERY *vs.* JOHN RITCHIE, JR.

Suffolk.    March 5, 1909. — May 22, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Contract*, Implied in law, Building contract.

Where, through a mutual honest mistake of the parties to a supposed contract for the construction of a building by one of them upon the land of the other, the building is erected in good faith without any express contract having been made between them, he who furnished the labor and materials at the request of the landowner may recover from him their fair market value, irrespective of the value which the erection of the building has or has not added to the land.

A fraudulent architect prepared an instrument purporting to be a contract in duplicate between the owner of a lot of land and a contractor for the construction of a Turkish bath house on the land. By means of a fraudulent shifting of typewritten sheets the instrument, when signed by the contractor, named as the contract price about $33,500 and, when signed by the landowner, named the contract price about $23,000. The instrument finally delivered to the contractor named the larger figure and that delivered to the owner the smaller one. The architect made all the payments for the owner and by repeated fraudulent representations prevented a discovery of the discrepancy between the two writings until the building was substantially completed. The contractor and the owner each acted honestly and in good faith, relying on the statements of the architect. The owner paid the price named in the instrument held by him, and the contractor sued him for a balance of about $10,500 alleged to be due to him. An auditor found that the market value of the labor and materials furnished by the plaintiff was $33,499 and that their total cost to the plaintiff was $32,950. He found also that the land and building had cost the defendant much more than their market value, and that the increase of the market value of the land by the structure which the plaintiff had put upon it was only $22,000. *Held*, that the plaintiff and the defendant were mistaken in supposing that they had made a contract for the construction of the building, because their minds never met, but that, the labor and materials having been furnished to the defendant at his request, and such request in legal effect not being limited to the amount of $23,000 which he thought was the price that he had agreed to pay for the completed building, the plaintiff could recover on a *quantum*

*meruit* the fair value of the labor and materials thus furnished, and the fact that the increase in the value of the defendant's property from the construction of the building was about $11,500 less than the value of the labor and materials furnished by the plaintiff had no effect upon the amount to be recovered. *Gillis* v. *Cobe,* 177 Mass. 590, discussed and distinguished.

CONTRACT for a balance of $10,467.16 alleged to be due for the erection of a Turkish bath house upon land of the defendant on Carver Street in Boston, with a count upon an alleged contract in writing and another count upon an account annexed. Writ dated January 9, 1904.

In the Superior Court the case was referred to Clarence H. Cooper, Esquire, as auditor. He filed a report containing the findings which are stated in the opinion. The case afterwards was tried before *Pierce,* J. The defendant introduced no evidence. At the close of the plaintiff's evidence the judge ruled that the plaintiff could not recover, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*R. W. Light,* for the plaintiff.

*E. F. McClennen,* for the defendant.

KNOWLTON, C. J. This is an action to recover a balance of $10,467.16, alleged to be due the plaintiff as a contractor, for the construction of a Turkish bath house on land of the defendant. The parties signed duplicate contracts in writing, covering the work. At the time when the plaintiff signed both copies of the contract the defendant's signature was attached, and the contract price therein named was $33,721. When the defendant signed them the contract price stated in each was $23,200. Until the building was completed the plaintiff held a contract under which he was to receive the larger sum, while the defendant held a contract for the same work, under which he was to pay only the smaller sum. This resulted from the fraud of the architect who drew the contracts, and did all the business and made all the payments for the defendant. The contracts were on typewritten sheets, and it is supposed that the architect accomplished the fraud by changing the sheets on which the price was written, before the signing by the plaintiff, and before the delivery to the defendant. The parties did not discover the discrepancy between the two writings until after the building was substantially completed. Each of them acted honestly and in good

faith, trusting the statements of the architect. The architect was indicted, but he left the Commonwealth and escaped punishment.

The auditor found that the market value of the labor and materials furnished by the plaintiff, not including the customary charge for the supervision of the work, was $33,499.30, and that their total cost to the plaintiff was $32,950.96. He found that the land and ·building have cost the defendant much more than their market value. The findings indicate that it was bad judgment on the part of the defendant to build such a structure upon the lot, and that the increase in the market value of the real estate, by reason of that which the plaintiff put upon it, is only $22,000. The failure of the parties to discover the difference between their copies of the contract was caused by the frequently repeated fraudulent representations of the architect to each of them.

The plaintiff and the defendant were mistaken in supposing that they had made a binding contract for the construction of this building. Their minds never met in any agreement about the price. The labor and materials were furnished at the defendant's request and for the defendant's benefit. From this alone the law would imply a contract on the part of the defendant to pay for them. The fact that the parties supposed the price was fixed by a contract, when in fact there was no contract, does not prevent this implication, but leaves it as a natural result of their relations. Both parties understood and agreed that the work should be paid for, and both parties thought that they had agreed upon the price. Their mutual mistake in this particular left them with no express contract by which their rights and liabilities could be determined. The law implies an obligation to pay for what has been done and furnished under such circumstances, and the defendant, upon whose property the work was done, has no right to say that it is not to be paid for. The doctrine is not applicable to work ·upon real estate alone. The rule would be the same if the work and materials were used in the repair of a carriage, or of any other article of personal property, under a supposed contract with the owner, if, through a mutual mistake as to the supposed agreement upon the price, the contract became unenforceable.

This rule, that labor and materials furnished for a person at his request are to be paid for, prevails unless there is something in the circumstances or in the relations of the parties to rebut the ordinary presumption, as when the parties are husband and wife, or parent and child, living together in the same family, or when there is something else to indicate that the service is gratuitous. In a case like the present, when the understanding and agreement is that payment shall be made, it would be absurd to say that nothing should be paid because of a failure, through a misunderstanding, fully to agree.

The principle has often been applied when the ground for an implication of an agreement to pay was much less strong than in the present case. In *Butterfield* v. *Byron*, 153 Mass. 517, where the owner was to do a part of the work in the erection of a building, and a contractor was to do the rest under an express contract for an agreed price, it was held that, when the building was destroyed by lightning, so that the contract became impossible of performance, the contractor might recover, on a *quantum meruit* the fair value of the labor and materials that he had furnished. This was on the ground that, when the contract came to an end without the fault of either party, there was an implication that what was furnished was to be paid for, and if it could not be paid for under the contract it should be paid for on a *quantum meruit*. The same thing had been held previously in *Cleary* v. *Sohier*, 120 Mass. 210. As was pointed out in *Butterfield* v. *Byron*, page 524, the rule is analogous in principle to the right to recover on a *quantum meruit* for that which has been paid or furnished under an express contract, when there is a failure of the consideration. In the present case the labor and materials were furnished for a consideration supposed by both parties to exist in the form of an agreement by the defendant to pay a stipulated sum. Through the mistake of both parties there was no agreement, and that which was thought to be a valuable consideration failed. What was furnished to the defendant, in accordance with an agreement of both parties on the faith of this supposed consideration, must be paid for when the supposed consideration fails. The principle was applied and restated in *Angus* v. *Scully*, 176 Mass. 357. The rule was said to be "that where one is to make repairs or do any

other work on the house of another, under a special contract, and his contract becomes impossible.of performance on account of the destruction of the house, without any fault on his part, then he may recover for what he has done." In *Butterfield* v. *Byron* it was said that under such circumstances "there is an implied assumpsit for what has properly been done by either of them, the law dealing with it as done at the request of the other, and creating a liability to pay for its value, to be determined by the price stipulated in the contract, or in some other way if the contract price cannot be made applicable." To the same effect is the decision in *Young* v. *Chicopee,* 186 Mass. 518. The fundamental principle was stated in *Hebert* v. *Dewey,* 191 Mass. 403, 411, in this language : "It is a general rule that if an implied condition that fails is of the essence of the contract, and enters largely into the consideration, in such a way that there can be no substantial performance under the conditions, the whole contract will fail, and the parties may have reasonable compensation for what they have done in reliance upon it." In the present case the supposed agreement to pay for the plaintiff's work and materials was of the essence of the contract, and its only consideration. This failed, and with it the whole contract fell to the ground, and the parties may have reasonable compensation for what they have done in reliance upon it. See *Hawkes* v. *Kehoe,* 193 Mass. 419, 423, 424. In *Eastern Expanded Metal Co.* v. *Webb Granite & Construction Co.* 195 Mass. 356, 362, 363, the principle was applied to a different state of facts, and the plaintiff was allowed to recover the price of labor and materials which had been furnished and used upon a contract which was void for illegality, and which was disaffirmed by the plaintiff for the illegality when it was entirely unexecuted in that part which the law forbade. The court said: "In this Commonwealth, when labor and materials are furnished and used upon real estate under a special contract, and for reasons which are not prejudicial to the plaintiff the contract becomes of no effect, it is held that the party furnishing them may recover upon a *quantum meruit* for their value as a benefit to the real estate." This case definitely decides that when labor and materials are furnished by a plaintiff under a special contract, and the contract is not binding upon either party, he may recover upon a *quantum meruit.* See

also *Pullman's Palace Car Co.* v. *Central Transportation Co.* 171 U. S. 138, 150.   *Spring Co.* v. *Knowlton*, 103 U. S. 79.   *Logan County National Bank* v. *Townsend*, 139 U. S. 67.   The general principle is the same as is always applied by the courts for the protection of parties who have acted under a mutual mistake of fact.

We think it plain that, under such circumstances as were shown in the present case, the law implies a contract on the part of the defendant to pay for that which the plaintiff furnished.

If the law implies an agreement to pay, how much is to be paid ?   There is but one answer.   The fair value of that which was furnished.   No other rule can be applied.   Under certain conditions the price fixed by the contract might control in such cases.   In this case there was no price fixed.

The defendant contends that because the erection of a Turkish bath house on Carver Street was not a profitable investment, and therefore, through a seeming error of judgment on the part of the defendant, the building did not add to the value of the land so much by a large sum as it cost, the plaintiff must suffer the consequences of the defendant's mistake and be precluded from recovery.   It is suggested that *Gillis* v. *Cobe*, 177 Mass. 584, 590, allows recovery only in reference to the pecuniary benefit derived by the owner from the change in the character of his real estate produced by the contractor, so that if, through his own bad judgment, the increase in the value of the property from the construction of the building is, as in this case, $10,000 to $15,000 less than the cost of the building to the contractor, the loss must fall upon the contractor if he seeks to recover under the rule stated in *Hayward* v. *Leonard*, 7 Pick. 181.   The decision in *Gillis* v. *Cobe* was by four justices of the court, while three others of the justices thought that a part of the statement of law in the opinion resulted from a misunderstanding of the meaning and effect of previous decisions of this court. If, in a suit founded on the law laid down in *Haywood* v. *Leonard*, the decision in *Gillis* v. *Cobe* can be construed as largely diminishing the amount which the contractor would otherwise be entitled to recover for the erection of a building like that in the present case, it is to be noticed that this is the only decision in this Commonwealth in which there has seemed to be any practical difference between the views stated in the opinions in the

case, in their application to the facts before the court, and the
only one in which the court has had occasion to consider the sub-
ject.   The evidence did not present for consideration the effect
of unwise management by the owner upon a contractor's right
to recover.   It is also to be noticed that nowhere, so far as we
have been able to discover, does the law, as applied to such
cases in other jurisdictions, make the right of the contractor
depend in any degree upon the profit or loss to the owner, aris-
ing from his wisdom or folly, or good fortune or bad fortune, in
erecting the building upon his land.

Whatever view may be taken of the law stated in that deci-
sion, it has no application to the case at bar.   In cases of that
class the work is done under an express contract which is bind-
ing upon both parties to the day of the trial.   If the contractor
has tried in good faith to perform his contract, and has per-
formed it substantially, the courts hold that it would be unjust
for the owner to stand upon the contract and refuse to pay any-
thing because of the contractor's failure to perform it fully.   It
is therefore held that, on equitable grounds, he must pay under
a rule which will give him all equitable rights secured by the
contract, whether in regard to damages for non-performance or
the rate of payment prescribed.   If the plaintiff's work and ma-
terials had been furnished under a binding contract which had
been substantially but not perfectly performed, we should be
obliged to determine whether, under the law so often stated in
Massachusetts, he could be precluded from recovery by reason
of the mistake or misfortune of this defendant in the manage-
ment of his property.   No such question arises on the facts now
before us.   In this case there was no express contract.   The
plaintiff's right is to recover upon an implied contract of an
owner to pay for labor and materials used upon his property at
his request.   Whatever may be the reason or the measure of the
right of recovery in cases like *Haywood* v. *Leonard,* in cases of
the class to which the present one belongs the right does not
depend upon the ultimate benefit received by the owner.

In *Butterfield* v. *Byron, ubi supra,* the destruction of the de-
fendant's property by lightning was what terminated the con-
tract and gave the plaintiff his right to recover.   In each of the
cases of *Cleary* v. *Sohier, Angus* v. *Scully* and *Young* v. *Chicopee,*

*ubi supra*, the same is true of the destruction of the owner's property by fire. In all cases to which this general principle has been applied, the recovery has been upon a *quantum meruit* for that which was furnished, subject to diminution of the amount by the price named in the contract, if that was very low. The right of recovery depends upon the plaintiff's having furnished property or labor, under circumstances which entitle him to be paid for it, not upon the ultimate benefit to the property of the owner at whose request it was furnished.

It follows that the plaintiff is entitled to recover the fair value of his labor and materials.

*Exceptions sustained.*