**In re MORTON SHOE COMPANIES, INC., as Successor to Morton's Shoe Stores, Inc. and as Agent for the Benefit of its Pre-Petition Creditors, Debtor.**

**MORTON SHOE COMPANIES, INC., Plaintiff,**

v.

**HERBERT & BOGHOSIAN, INC., Defendant.**

**Bankruptcy No. 82–0007–HL.**

**Adv. No. 83–0644.**

United States Bankruptcy Court, D. Massachusetts.

Nov. 4, 1983.

Charles L. Glerum, Choate, Hall & Stewart, Boston, Mass., for plaintiff/debtor.

Craig & Macauley, Jerome E. Rosen, Boston, Mass., for defendant.

PROPOSED * MEMORANDUM ON PREFERENTIAL CLAIM AGAINST HERBERT & BOGHOSIAN, INC.

HAROLD LAVIEN, Bankruptcy Judge.

On July 18, 1983, Morton Shoe Companies, Inc. (the "debtor"), filed a complaint against Herbert & Boghosian, Inc., ("H & B"), alleging certain preferential transfers pursuant to 11 U.S.C. § 547. Trial was held on August 29, 1983. The Court, having heard the evidence and having reviewed the briefs of counsel, makes the following findings of fact and rulings of law.

The debtor, a retailer of footwear and other related apparel, filed a Chapter 11 petition on January 5, 1982. In mid 1981, the debtor contracted with H & B to redesign and remodel two stores of the debtor located in Whitemarsh and Hunt Valley, Pennsylvania. The contract [1] between the debtor and H & B was a Standard Form of

---

* See Emergency Rule (d)(3)(B). Defendant has challenged jurisdiction.

1. The contract between the debtor and H & B for these two stores was never presented to the Court. Only a contract for a previously rede-

signed store between the debtor and H & B was presented as an exhibit to H & B's post-trial brief. For the purposes of this opinion, the Court will assume that the contract in question is the same.

Agreement Between Owner and Contractor, also known as AIA Document A107, the authors being the American Institute of Architects. Included in the contract was AIA Document A201, General Conditions of the Contract for Construction. In accordance with the contract, H & B, upon completion of specified portions of the contracted for projects, was to submit an itemized application for payment to a previously designated architect for approval. Accordingly, applications were submitted: one, on September 9, 1981, for the Hunt Valley Store totalling $57,329; another, also on September 9, 1981, for the Whitemarsh Store for $22,009; and, on October 19, 1981, one for the Whitemarsh Store for $1,066.97. The applications for $57,329 and $22,009 were approved by the architect on September 23rd. The application for $1,066.97 was partially approved on December 8, 1981 and partially rejected on January 12, 1982. Checks, made payable to H & B, of $28,-664.50 dated November 12, 1981, $23,075.97 dated November 18, 1981, and $28,664.50 dated November 25, 1981, were sent to H & B on or about that date and presumably received a day or two later.[2] The respective checks were not honored, however, until November 24, December 7, and December 24, 1981.

11 U.S.C. § 547(b) defines a voidable preference recoverable by the trustee. In this case, there is no dispute that all of the requirements of a preference exist, namely: the payment of an antecedent debt with funds of the debtor within 90 days of filing while the debtor was insolvent that would enable this debtor to receive more than it would get on liquidation.

The defense is based on 11 U.S.C. § 547(c)(2).

11 U.S.C. § 547(c)(2), providing an exception to the voidability to preferential transfers, states:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms . . . .

It was undisputed at trial that the transfer qualified under subsections (A), (C), and (D). The only question presented to this Court was whether the debt was incurred within 45 days of the transfer. 11 U.S.C. § 547(c)(2)(B).

In order to resolve that question, the Court must make two determinations. First, on what date was the transfer of the debtor's assets made to H & B? Second, on what date was the debt incurred?

■ As to the date on which the transfer of the debtor's assets occurred, this Court has already considered the authorities including the case of *Shamrock Golf Co. v. Richcraft, Inc.*, 680 F.2d 645 (9th Cir.1982) and has determined for the reasons it set forth in *In re Supermarket Distributors Corp.*, 25 B.R. 63 (Bkrtcy.D.Mass.1982)[3]

---

**2.** The first and last check encompasses the debt owed for the Hunt Valley Store, while the second check was for the Whitemarsh Store.

**3.** For those cases that support this Court's holding in *In re Supermarket Distributors Corp.* see *Nicholson v. First Inv. Co.*, 705 F.2d 410 (11th Cir.1983); *Klein v. Tabatchnick*, 610 F.2d 1043 (2nd Cir.1977); *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288, 1293 (7th Cir. 1974); *In re Mailbag Int'l, Inc.*, 28 B.R. 905, 10 B.C.D. 496 (Bkrtcy.D.Conn.1983); *In re Advance Glove Co.*, 25 B.R. 521, 524–27, 9 B.C.D.

1395 (Bkrtcy.E.D.Mich.1982); *In re Skinner Lumber Co.*, 27 B.R. 669 (Bkrtcy.D.S.C.1982); *In re Ardmore Sales Co.*, 22 B.R. 911 (Bkrtcy.E.D.Pa.1982); *In re Mindy's Inc.*, 17 B.R. 177 (Bkrtcy.S.D.Ohio 1982); *In re Kimball*, 16 B.R. 201 (Bkrtcy.M.D.Fla.1981); *In re Sportsco, Inc.*, 12 B.R. 34, 35, 7 B.C.D. 1025 (Bkrtcy.D.Ariz. 1981); *In re Wadsworth Building Components, Inc.*, 10 B.R. 662 (Bkrtcy.D.Idaho 1981); *In re Duffy*, 3 B.R. 263, 6 B.C.D. 88 (Bkrtcy.S.D.N.Y. 1980); *Contra, Shamrock Golf Co. v. Richcraft, Inc.*, 680 F.2d 645 (9th Cir.1982); *In re Thomas W. Garland, Inc.*, 19 B.R. 920, 928 (Bkrtcy.E.D.

that there is no transfer until no bona fide purchaser from the debtor or attaching creditor of the debtor can reach the funds. 11 U.S.C. § 547(e)(1) and § 548(d)(1). A transfer only occurs when the drawee bank accepts the check and debits the account. A check is not by itself an assignment of funds. *Williams v. U.S.*, 34 U.C.C. 385, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982). Therefore, the transfer in payment dates are November 24 ($28,664.50) and December 24 ($28,664.50) for the Hunt Valley Store; and December 7 ($23,675.97) for the Whitemarsh Store.

As to the crucial second date of when the debt was incurred, H & B argues that the architect must review and approve each application before a debt is incurred.[4] In the case at bar, the applications for $22,009 and $57,329 were submitted on September 9 and approved on September 23, 1981. Even under the most favorable interpretation, the payments for these applications did not fall within the 45 days of subsection (B). As to the last application for $1,066.97, although not as great a sum as the others, it cannot be dealt with as summarily.

The $1,066.97 application for payment was dated October 19, 1981. Of the $1,066.97, $732.28 was approved on December 8, 1981, and $333.69 was rejected on January 12, 1982. H & B contends these later dates control when the debt is incurred. A debt is incurred, however, when "services are rendered or when a debtor obtains a property interest in goods, not when an invoice is sent." *In re Saco Local Development Corp.*, 25 B.R. 876 (Bkrtcy.D. Me.1982), *see also In re Emerald Oil Co.*, 695

F.2d 833, 837 (1983) ("when the debtor becomes obligated to pay it . . . ."); *In re Iowa Premium Service Co.*, 695 F.2d 1109, 1111, (8th Cir.1982) ("when the debtor first becomes legally bound to pay . . . ."); *In re Valles Mechanical Industries, Inc.*, 20 B.R. 350, 352 (Bkrtcy.Ga.1982) ("whenever the debtor obtains a property interest [in] consideration exchanged giving rise to the debt."); *Barash v. Public Finance Corp.*, 658 F.2d 504, 509 (7th Cir.1981). The main thrust of all these cases is that a debt arises upon performance, delivery, or its equivalent—not when payment is due.

In the case at bar, the work[5] was performed before the preparation of the applications for payment. Both the contract and case law recognize that an obligation is created even when the architect fails to certify through no fault of the contractor. *Andre v. Maguire*, 305 Mass. 515, 26 N.E.2d 347 (1940); *Gillis v. Cobe*, 177 Mass. 584, 590, 59 N.E. 455 (1901). In such circumstances, the architect's certification is analogous to an invoice rather than a necessary element in incurring a debt. In *In re Saco*, 25 B.R. 876, the defendant performed certain automobile repairs. If the court had held the date of invoice controlling, the debts would not have been preferences. The court held, however, that

> debts are incurred when services are rendered, not when an invoice is sent. Put another way, debts are incurred "when a debtor first becomes legally bound to pay." *Barash v. Public Finance Corp.*, 658 F.2d 504, 510 (7th Cir.1981). In this proceeding the debts were incurred no later than when [defendant]

Mo.1982). Since the language of the statute seems clear, legislative history may be irrelevant. However, an analysis of the legislative history lends further support to the date of clearance being the date of transfer. *See In re Advance Glove Co.*, 25 B.R. 521, 524–27, 9 B.C.D. 1395, 1397–99 (Bkrtcy.E.D.Mich.1982).

**4.** The General Conditions of the Contract for Construction, § 9.3.1., provides that application must be submitted "at least 10 days before each progress payment established in the Owner-Contractor Agreement." The agreement supplied, *see* n. 2, *supra*, only provides for payment upon the completion of certain per-

centages of the project, not payment upon specific dates. The applications for payment, however, stated that the work was "completed." Accordingly, the Court finds that these applications either were submitted or should have been submitted 10 days before the date the completed application stated.

**5.** The Court notes in passing that $333.69 was rejected by the architect. Therefore, an adjustment of H & B's proof of claim may be in order. That issue, however, is not before the Court at this time.

**17**

completed the repair work on the vehicles.

*Id.* at 879.

Of course, if the architect had rejected the application, no debt would have been incurred. *See* n. 5, *supra.* On the other hand, when an architect approves an application, such approval indicates that the work described by the application was in fact completed and, therefore, the debt was incurred prior to the application for payment.

Moreover, the application for payment states that the work was completed. The application, in pertinent part, states:

> The undersigned Contractor certifies that to the best of his knowledge information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by him for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

Also not to be overlooked is the conduct of the parties. The application was made on October 19, a check prepared on November 18, and the check honored on December 7, 1981. The architect, however, did not certify until December 8, 1981 and January 12, 1982, clearly after the date of payment. Certainly, the actions of both parties indicates that they considered the debt being incurred when the work was performed, and not when the architect approved or disapproved the work.

The Court recognizes that the defendant acted honestly and in good faith throughout its dealings with the debtor. Accordingly, the defendant may feel that it is being treated unfairly and unjustly. However,

> It has never been contended that preference recovery is fair to the preferred creditor; it is those creditors which did not receive payment within the preference period that are aided by a preference recovery action. Further, the creditor's good faith and lack of knowledge of

the debtor's insolvency are no longer defenses to this type of action.

*In re Anders,* 20 B.R. 468, 469 (Bkrtcy.M.D. Fla.1982); *see also In re Saco,* 25 B.R. at 880.

Accordingly, $80,404.97 is found to be a preferential transfer to be returned to the debtor's estate.