The FERBER COMPANY et al.,
Plaintiffs, Appellants,
v.
Theodore J. ONDRICK et al., Defendants,
Appellees.
No. 6015.

United States Court of Appeals
First Circuit.
Nov. 28, 1962.

---

**464**

Gerson Askinas, Springfield, Mass., for appellants.

John H. Goewey, Worcester, Mass., and William T. Conlan, Boston, Mass., with whom Bowditch, Gowetz & Lane, Worcester, Mass., and Ely, Bartlett, Brown & Proctor, Boston, Mass., were on brief, for appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

Ferber, short for two New Jersey corporations, joint venturers, was the prime contractor engaged in the construction of a housing project for a government Air Force base in Chicopee, Massachusetts. In August, 1958 Ferber entered into a subcontract with two other joint venturers, Ondrick, a citizen of Massachusetts, and Wilbraham Construction Corporation, a Massachusetts corporation, to do certain clearing, excavation, filling and drainage. It appeared that Ondrick and Wilbraham were equipped to do different parts of this work and desired separate contracts, but Ferber required a single agreement. After the work had been completed and $46,508 of

the contract price remained to be paid, Wilbraham went into bankruptcy. Ferber thereupon filed a statutory interpleader (28 U.S.C. § 1335) in the Massachusetts district court against Ondrick, Wilbraham and their joint surety, and Wilbraham's trustee in bankruptcy, naming also all alleged suppliers of labor and materials on their contract as to whom it had notice of claim. The complaint further alleged that Ondrick claimed as an individual, over and above the contract amount, $19,744 for labor, materials and the use of equipment.[1] Ferber paid the sum of $46,508 into court, alleged that this was the total amount due to all defendants, and prayed that the defendants be required to interplead and settle their rights between themselves and that Ferber "be discharged from all liabilities in the premises. * * *" Ondrick filed an answer in which he admitted making a claim for $19,744 "not as part of the joint venture," and by counterclaim demanded its payment. Ferber filed a motion to dismiss the counterclaim, which motion was denied. Following trial without jury the court found for Ondrick on his claim in the amount of $7,121, which it subsequently increased to $10,711. The court refused Ferber's request for an allowance for counsel fees out of the fund, a so-called interpleader fee. Ferber appeals.

The first question is the correctness of the court's refusal to dismiss the counterclaim on the ground that the parties had provided in the subcontract for arbitration. Assuming that Ondrick's claim fell within the contract as extra work and was therefore arbitrable, we nevertheless think it clear that Ferber waived this right. Ferber could have brought a bill of strict interpleader solely with relation to the undisputed amount. But having elected, in addition, to raise a disputed claim, see F.R.Civ.P. Rule 22; Standard Surety & Casualty Co. v. Baker, 8 Cir., 1939, 105 F.2d 578,

1. Hereafter we shall disregard Wilbraham, because even if this work was done pursuant to a modification of, and hence as part of, the joint contract, admittedly it was done by Ondrick alone. Wilbraham has in no way participated in this appeal.

it must take the consequences. It could not ask the court to declare that it owed only so much to Ondrick, and that the court should discharge it from his claim for extra work, and then, when Ondrick resisted such a declaration, demand that Ondrick arbitrate.

■■ Next, Ferber asserts that a series of so-called releases executed from time to time by Ondrick in connection with progress payments bars recovery. These documents do not use the word "release" in the title, nor is it in the body of the instrument except with respect to liens upon the premises. Ondrick is not presently asserting liens. The documents were prepared by Ferber and are to be construed against it. We agree with the court in disregarding them.

We come, therefore, to the merits. The principal contract called for the erection of ninety-six structures, all of which were to have concrete cellars, with drainage fill under the concrete. By the end of September 1958 some of the foundations were ready for the fill. The principal contract required the fill to be placed and, in addition, to be "compacted." Ferber took the position that all of this work was included in the subcontract and demanded that Ondrick do it. Ondrick admitted responsibility for supplying the gravel at the locus, but denied any further obligation. On the evidence most favorable to Ondrick, one Cristello, Ferber's superintendent, instructed Ondrick to place and compact the gravel, and stated that if this did not prove to be within the subcontract Ferber would pay extra for it. Ondrick thereafter did the filling and compacting for all ninety-six units, and presented a bill in the amount of $19,744.

■ The court found that installing the fill was not within the subcontract. This was a question of interpretation, and it is sufficient to say that we find the district court's reasoning persuasive.[2] The contract provided further, under the subtitle "Change Orders Additions and Deductions" that "alterations" should not be effected except by written order of Ferber. No written order was given for this extra work. The court, however, found that Cristello had sufficient authority to alter the contract.

■■ It is, of course, rudimentary that a contractual requirement that agreements be in writing may be waived. Lord Constr. Co. v. United States ex rel. W. E. Sexton Co., 3 Cir., 1928, 28 F.2d 340; Zarthar v. Saliba, 1933, 282 Mass. 558, 185 N.E. 367. The fact, however, that Cristello may have possessed authority to waive a writing, and substantially to enlarge the agreement, is of little help to Ondrick so far as the total amount of the recovery here involved is concerned. On his own testimony the top officials of Ferber informed Ondrick at some point that this work was within his original contract and must be done thereunder. According to Ferber's evidence this took place in December 1958. Ondrick testified that he was entirely unable to place the date, but he admitted that this work lasted until December 1959 and that many individual unit jobs were done by him after Ferber's interview, as result of pressure put on him by the top Ferber officials acting through the bonding company, although he constantly maintained that he was not required to do it. It cannot be said that Cristello's promise to pay extra if this was in fact extra work remained in effect for jobs undertaken after Ferber's repudiation thereof. The court made no finding which would enable us to separate the amount, or value, of the work done before Ferber's repudiation and afterwards.

■■ The court, however, made an alternative finding or ruling with which we agree, namely, that Ondrick was entitled to recover on a *quantum meruit* for unjust enrichment. Normally a party doing work without a contract for another party who has stated in advance

---

2. We note, *inter alia*, that in order to support its construction Ferber is required to say that some of the language of the agreement is surplusage, a presumptively unsound position.

that he is not going to pay for it can have no claim. The facts, however, in the case at bar are peculiar. Ferber was obligated under its contract with the government to complete the units, including the placing and compacting of the drainage fill in question. Evidence which we need not detail compels the conclusion that if Ondrick and Wilbraham were not obligated to do this work, no one else was. In other words, if Ondrick had refused to do it, Ferber would have been obliged to obtain someone else. It loses nothing by paying Ondrick the fair value of the work. Where Ferber insisted that Ondrick do the work, and by its own admission sought to create serious difficulties with Ondrick's bonding company, we think it would be highly inequitable to treat Ondrick as a volunteer not entitled to reimbursement. See Todd Dry Dock Engineering & Repair Corp. v. City of New York, 2 Cir., 1931, 54 F.2d 490, 491; cf. Borough Constr. Co. v. City of New York, 1910, 200 N.Y. 149, 93 N.E. 480. Even though Ferber may not have believed that it was going to have to pay a greater amount, it requested the work, there was no suggestion that Ondrick intended it as a gratuity, and the law will imply an agreement to pay the fair value of what was outside the contract. Molloy v. Liebe, P.C., 1910, 102 L.T.R. (n.s.) 616; cf. Vickery v. Ritchie, 1909, 202 Mass. 247, 88 N.E. 835, 26 L.R.A.,N.S., 810.

■ We think, however, that the court may have erred in its supplemental opinion increasing the amount of the payment. In its initial opinion the court found that "Ondrick's records were shown to be incomplete and unreliable.[3] I shall, therefore, accept the cost estimate of the plaintiffs [Ferber] which is $5,934, to which are to be added 10 per cent for profit and 10 per cent for overhead [4] * * * [a total of] $7,121." Thereafter, in a supplemental opinion, the court stated that in its previous opin-

ion it had neglected to consider all of the testimony of Ferber's "chief estimator," and that there should have been added "the plaintiff's estimate of the price for compacting $2,992," and that the judgment should be corrected accordingly. It then entered judgment in favor of Ondrick for $10,711.

In point of fact there was no specific testimony that plaintiff's estimate for compacting was $2,992. Ferber's estimator, one Hebbel, did testify that the separate cost of compacting was "about 80 cents a yard," and the court apparently multiplied this to obtain a specific amount. However, we think Hebbel's testimony is somewhat ambiguous, and that it does not clearly show that the "about 80 cents" was not a part of the $5,934 figure rather than an addition to it. Ferber's other witness was not at all ambiguous, but testified specifically that plaintiff's estimate of $5,934 included the compacting.

Upon receipt of the supplemental opinion Ferber addressed what we construe to be a motion for further hearing with respect to the court's supplemental opinion. To this it attached a paper which it alleged to be the original estimate itself. This paper shows clearly that compacting was included in the $5,934 total. Upon receipt of this the court conducted a further proceeding. However, as we read the record, Ferber's claim in this regard was not specifically considered, but rather the discussion took the form of whether the case could be settled.

The court was not obligated to accept Ferber's estimate. However, where it made findings specifically relying thereon, it was bound to construe it accurately. We feel that if the document attached to Ferber's motion was the original estimate—which is not, of course, for us to say—the court should have recognized the ambiguity in the testimony and withdrawn its supplemental opinion. Possi-

---

3. By which it meant, in part, that certain matters were charged for twice.

4. We have held that in certain situations profit and overhead may be recovered

on a *quantum meruit*. Arthur N. Olive Co. v. United States ex rel. Marino, 1 Cir., 1961, 297 F.2d 70. Ferber raises no objection in this instance.

bly it should have regarded Hebbel's testimony as ambiguous even standing by itself, particularly in the light of the testimony of the other witness which manifestly referred to the same estimate, and should not have disregarded the latter. We believe this matter deserves further consideration by the district court.

 Finally, Ferber complains that the court erred in denying it an interpleader fee. In this, Ferber has exhibited two serious misconceptions. To quote its position in the district court, "10 per cent of what has been deposited in court [is the usual] fee. * * * I have spent several hundred hours on this. * * *" Ten per cent is not the "usual" amount. Nor would Ferber be entitled to an award of counsel's fee out of the fund for resisting Ondrick's counterclaim even if that resistance had been successful. An interpleader fee is usually [5] awarded out of the fund to compensate a totally disinterested stakeholder who has been, by reason of the possession of the fund, subjected to conflicting claims through no fault of its own. By its very nature it is of a relatively small amount, simply to compensate for initiating the proceedings. As to the $46,744 Ferber was undoubtedly a disinterested stakeholder. Obviously, however, the great bulk of its efforts were in resisting Ondrick's counterclaim, as to which the court properly pointed out it was in no way disinterested or entitled to a fee. See Standard Surety & Casualty Co. v. Baker, supra, 105 F.2d at 580. It may well be that had Ferber made an appropriate limited request the court would have recognized it. But we will not rule that the court committed an abuse of discretion when Ferber's only request was one that was totally inappropriate.[6] Nor did the court abuse its discretion in denying Ferber's tardy counterclaim.

Judgment will be entered vacating the judgment of the District Court and remanding the action for further proceedings in accordance with this opinion. No costs for either party.

---

5. We do not agree, at least in this circuit, with 2 Barron and Holtzoff, Federal Practice and Procedure § 557 (rev. ed., 1961), that it is not customary to allow interpleader fees.

6. The court did award Ferber its actual interpleader disbursements in the amount of $100.