

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00189-CV

———————————————————

IN THE ESTATE OF GUS W. RIEFLER JR., DECEASED

On Appeal from the County Court at Law
Cooke County, Texas
Trial Court No. PR-17203-1

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Under the American Rule, a party generally may not recover attorney's fees unless authorized by statute or contract. *In re Nat'l Lloyds Ins.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding). In its findings of fact and conclusions of law, the trial court cited two bases for awarding attorney's fees to appellee Danny Joe Jonas Jr.: breach of contract and interpleader.

On appeal, appellant Ronald Brian Ayers (Brian or Brian Ayers) contests both of these grounds. As to the contract theory, he asserts that any recovery is barred because Danny Joe failed to plead and prove his satisfaction of a condition precedent to attorney's fees under the contract: participating in mediation. As to the interpleader theory, Brian contends that Danny Joe was not an innocent, disinterested stakeholder in the funds he sought to interplead, which disqualifies him from collecting attorney's fees under an interpleader theory.

On both accounts, we agree. We therefore reverse the award of attorney's fees and render judgment that Danny Joe take nothing.

## I.    BACKGROUND

This is an appeal from an action for attorney's fees in the County Court at Law of Cooke County. But this case is an outgrowth of an earlier set of disputes concerning the estate of Gus W. Riefler Jr. To set out the pertinent facts for this action, we must briefly cover the earlier probate proceedings in Cooke County, as well as some satellite litigation in the courts of Comanche County.

## A.  The Cooke County Probate Proceedings

Riefler died intestate in 2014.  The central issue in the probate proceedings was whether Riefler's estate should go to (1) Riefler's stepdaughter and her heirs or (2) Riefler's siblings and their heirs.

Riefler's stepdaughter Claudia D. Jonas began the proceedings by filing for an independent administration in the County Court at Law of Cooke County.  She claimed to be Riefler's sole rightful heir.  When Claudia died, her cause was taken up by her children, and foremost among them was Danny Joe, who became the administrator of her estate.

The family of Riefler's sister Mary Theresa Ayers opposed the Jonases' claim to Riefler's estate.  Her husband Ronald Alan Ayers (Ronald Ayers), who was acting as her guardian, filed his own application to determine heirship in which he argued that Mary Theresa Ayers was entitled to half the Riefler estate.  Also contesting the Jonases' claims was James Timothy Nelson, the son of another of Riefler's sisters.

In 2016, the parties attended a mediation, which resulted in a settlement agreement.  Under the settlement, Danny Joe would be appointed administrator of Riefler's estate, and Mary Theresa Ayers and Nelson would jointly receive a payment of $440,000 from the estate.  It was further agreed that Claudia Jonas was Riefler's sole rightful heir and, therefore, that the Jonases alone were entitled to inherit the remainder of Riefler's estate.

3

Danny Joe filed an application to approve the settlement. But Ronald Ayers soon changed course and objected to the settlement, arguing that it was invalid. The Jonases amended their petition to add a claim that Ronald had breached the settlement agreement by challenging it, and they sought attorney's fees for the breach.

After a trial, the Cooke County court entered a final judgment in July 2016, followed by a series of amended judgments to consolidate the cause numbers under which the case had been proceeding.[1] The last of these final judgments decreed that the settlement agreement "is hereby accepted and given full effect" and that "each side will be responsible for their own expenses incurred herein." The court thus did not award the Jonases attorney's fees.

Ronald appealed the Cooke County judgments, and in late 2017, the Amarillo Court of Appeals affirmed, decreeing that the settlement agreement was valid and enforceable. *Estate of Riefler*, 540 S.W.3d 626, 628–29 (Tex. App.—Amarillo 2017, no pet.).

## B.     The Guardianship Proceeding in Comanche County

Meanwhile, in late 2016, Ronald Ayers was also attacking the settlement agreement on another front: the courts of Comanche County, which at that time had jurisdiction over the Ayers guardianship. Having obtained the transfer of his wife's guardianship proceeding from the Probate Court of Dallas County to the County Court

---

[1] Those cause numbers were PR-17203, PR-17203-1, and PR-17203-2.

of Comanche County, Ronald filed an application to avoid the settlement in the latter court on October 4, 2016. On October 5, 2016, the County Court of Comanche County, on its own motion and pursuant to Section 32.003(a)(2) of the Texas Estates Code, transferred the guardianship proceeding to the 220th District Court for Bosque, Comanche, and Hamilton Counties. On December 5, 2016, the judge of the district court signed the "Order Disapproving Settlement" that had been submitted with Ronald's application in the county court.

Danny Joe subsequently filed a timely plea in intervention and motion for new trial, which the district court granted on February 18, 2017. In February 2017, a new trial was purportedly granted.[2] The district court thereafter took no further action with respect to the settlement and Ronald's efforts to avoid it.

While the appeal was pending, Mary Theresa Ayers died, and her son, Brian Ayers, filed a probate proceeding in the County Court of Comanche County, separate and distinct from the guardianship proceeding in the district court, on September 22, 2017. On November 15, 2017, the county court entered an order granting letters of

---

[2]By signing the "Order Disapproving Settlement" submitted with Ronald's application, which included the style and cause number of the county court, the judge of the district court caused some degree of confusion in the record because nothing about the order indicated that its rendition occurred after the transfer of the guardianship proceeding to the district court other than the distinctive signature of the judge, the date of his signature, and a facsimile transmission line from the "Comanche Dist. Court" dated December 29, 2016. Because the parties treat this order as an order of the district court, so do we.

administration to Brian as the administrator of his mother's estate. The district court subsequently closed the guardianship proceeding in February 2018.

## C. This Proceeding on Attorney's Fees in Cooke County

Following the Amarillo Court of Appeals' affirmance of the Cooke County judgments, Danny Joe launched the latest stage of the proceedings in June 2018, when he filed a new petition in the County Court at Law of Cooke County in the same cause number as the prior probate proceedings. In his petition, Danny Joe pleaded three causes of action, all apparently with the aim of obtaining attorney's fees for services rendered in the prior appeal before the Amarillo Court of Appeals, the satellite litigation in Comanche County, and the latest proceedings in Cooke County.

Danny Joe's first claim was an interpleader action. He explained that he was uncertain how to discharge his responsibility as administrator of Riefler's estate because he did not know whom he should pay the $440,000 that was owed under the settlement agreement, and he requested leave to deposit those funds into the registry of the court through an interpleader.[3] According to Danny Joe, he anticipated that Nelson and Brian would assert rival claims to the $440,000. As an "innocent stakeholder" caught

---

[3]His uncertainty, he alleged, was due in part to changes within the Ayers camp: Mary Theresa Ayers had died, her guardianship had ended, and Brian Ayers had become administrator of her estate. Danny Joe further alleged that he had encountered some difficulty confirming how the $440,000 was going to be divided between the Ayers camp and Nelson.

6

between these rival claims, he prayed that he be allowed to recoup his attorney's fees from the interpleaded funds.

The second cause of action was one for breach of contract. Danny Joe reasoned that he should be entitled to attorney's fees because in the earlier proceedings, he had successfully prosecuted a contract claim related to the settlement agreement: despite Ronald's efforts to contest the settlement agreement, the county court at law had adjudged the settlement to be enforceable, and the appellate court had affirmed. He argued that as the prevailing party in a contract action, he should recover attorney's fees. Danny Joe did not, however, plead that all conditions precedent had been satisfied.

Third, he pleaded a declaratory-judgment action, the substance of which is not relevant to this appeal.

Brian Ayers filed a pro se answer in July 2018. In relevant part, Brian alleged that Danny Joe had forfeited any right to attorney's fees because he had not abided by a provision in the settlement agreement concerning dispute resolution, which provided that a party who refused to mediate before filing suit waived any right to attorney's fees. Brian argued that under this provision, Danny Joe had waived any right to attorney's fees because he had failed to pursue mediation before filing suit.

After this exchange of pleadings, the Cooke County court authorized Danny Joe to interplead the $440,000 into the court's registry in August 2018. In October 2018, Danny Joe tendered the $440,000 for deposit into the court's registry.

7

In November 2018, the court held a hearing on the parties' motions and responses. Afterward, the court rendered an order awarding Danny Joe attorney's fees of $86,800.34.

By December 2018, Brian had retained an attorney, and he filed multiple motions for new trial raising a host of new arguments against the attorney's fees, including res judicata. The court denied these motions but rendered an amended order that segregated the attorney's fees attributable to the Comanche County guardianship proceedings ($40,718.34), the prior appeal ($23,114.50), and the ongoing proceedings in Cooke County ($16,853.66). The Cooke County court deducted all of those fees from the Ayerses' share of the $440,000 and ordered that the remaining funds be distributed to Nelson and to Brian as administrator of Mary Theresa Ayers's estate.

In support of the award, the court rendered findings of fact and conclusions of law in which the court determined that Danny Joe had carried his burden to show entitlement to attorney's fees on his interpleader action and his breach-of-contract action. The findings and conclusions did not mention the declaratory-judgment action.

Brian appealed the award of attorney's fees. Danny Joe cross-appealed, challenging the trial court's decision not to award him attorney's fees in the event of an unsuccessful appeal by Brian.

## II. BRIAN'S APPEAL

We review a trial court's award of attorney's fees for an abuse of discretion. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018).

8

## A. Res Judicata, Collateral Estoppel, and Jurisdiction

Brian's first and fifth issues essentially raise the same argument. We begin with Brian's fifth issue in which he asserts that res judicata and collateral estoppel should bar Danny Joe's request for attorney's fees on a contract theory. Brian notes that in the earlier Cooke County litigation, Danny Joe failed to secure a finding on attorney's fees with respect to his contract theory, and Brian argues that Danny Joe's failure to do so precluded the trial court from awarding attorney's fees on the very same contract theory in a subsequent suit.

However, in the trial court, Brian did not properly plead res judicata or collateral estoppel. The Texas Rules of Civil Procedure require that specific defenses and any matter constituting an avoidance or affirmative defense be set forth affirmatively in a responsive pleading. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155 (Tex. 2015) (quoting Tex. R. Civ. P. 94). "If an affirmative defense or avoidance is not expressly pleaded, the party cannot rely on the defense as a bar to liability." *Id.* Res judicata is among the defenses that must be expressly pleaded under Rule 94. Tex. R. Civ. P. 94. Thus, we have held that a party "waived his res judicata claim" by failing to specifically plead it. *Garner v. Long*, 106 S.W.3d 260, 264 (Tex. App.—Fort Worth 2003, no pet.). Collateral estoppel must also be affirmatively pleaded under Rule 94 or else it is waived. *Haire v. Nathan Watson Co.*, 221 S.W.3d 293, 299 (Tex. App.—Fort Worth 2007, no pet.). Brian did not plead the defense of collateral estoppel in the trial court, and he raised res judicata for the first time in a motion for new trial, which was simply "too late to equate

9

to a timely affirmative pleading raising this defense." *See Reid v. UDR Tex. Props., LLC*, No. 02-15-00108-CV, 2016 WL 7448362, at *3 (Tex. App.—Fort Worth Dec. 28, 2016, no pet.) (mem. op. on reh'g). An affirmative defense raised for the first time in a motion for new trial is untimely. *In re J.P.*, 296 S.W.3d 830, 837 (Tex. App.—Fort Worth 2009, no pet.) (citing *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.)); *accord Jurek v. Couch-Jurek*, 296 S.W.3d 864, 876 (Tex. App.—El Paso 2009, no pet.). Because Brian waived his res judicata and collateral estoppel claims, we overrule his fifth issue.

Brian's first issue is evidently an attempt to compensate for his failure to plead res judicata: he recasts the problem as a question of jurisdiction, which cannot be waived. Brian observes that in the earlier Cooke County probate litigation, the county court at law's judgment lacked any mention of attorney's fees. He reasons that when the court of appeals affirmed, the county court at law's judgment became the judgment of the court of appeals. Thus, according to Brian, the failure of the court of appeals to mention attorney's fees in either its opinion or its judgment is so powerful that it stripped the county court at law of jurisdiction to award attorney's fees in this subsequent matter, which involves the same parties, subject matter, and cause number.

By any other name, the substance of this argument is nonetheless res judicata. "Res judicata, also known as claim preclusion, prevents the relitigation of a finally adjudicated claim and related matters that should have been litigated in a prior suit." *Peterson, Goldman & Villani, Inc. v. Ancor Holdings, LP*, 584 S.W.3d 556, 562–63 (Tex.

App.—Fort Worth 2019, pet. denied). Two elements of the res judicata defense are the identity of the parties and the requirement that claims in the subsequent suit arise from the "same subject matter" as the original suit. *See id.* at 563.

The First District Court of Appeals at Houston rejected a comparable attempt to equate res judicata with jurisdiction in *Whallon v. City of Houston*, 462 S.W.3d 146, 155 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). There, the appellants argued that a set of orders issued by an administrative commission became final and binding and that, as such, the district court lacked jurisdiction to relitigate or otherwise disturb the commission's orders. *Id.* at 154–55. On appeal, the court refused this attempt to "conflate[] the separate and distinct concepts of res judicata and subject-matter jurisdiction." *Id.* at 155. Rather, the *Whallon* court concluded that the commission's prior orders and res judicata itself had no bearing on the district court's jurisdiction to consider the merits of a subsequent suit. *Id.* And because the appellants had failed to plead res judicata, the court held that affirmative defense to be waived. *Id.*

We agree with *Whallon*. "Res judicata is not a jurisdictional issue; rather, it is an affirmative defense that may be waived by the party allowed to assert it." *United States v. Metro. St. Louis Sewer Dist.*, 952 F.2d 1040, 1043 (8th Cir. 1992); *Rogin v. Bensalem Twp.*, 616 F.2d 680, 684 n.11 (3d Cir. 1980) ("Res judicata is an affirmative defense, . . . not a question of jurisdiction."); *Scholla v. Scholla*, 201 F.2d 211, 213 (D.C. Cir. 1953) ("[R]es judicata does not create a jurisdictional bar."). We therefore reject Brian's attempt to

dress res judicata in jurisdictional clothes in order to avoid the problem he himself created when he failed to plead that defense. We overrule Brian's first issue.

## B. Condition Precedent

In his second issue, Brian challenges the legal and factual sufficiency of the evidence to show that Danny Joe satisfied a condition precedent for attorney's fees. According to Brian, paragraph 11 of the settlement required the parties to seek mediation before bringing suit as a condition precedent to attorney's fees; if a party brought suit without mediating first, that party would forfeit any entitlement to attorney's fees in litigation to enforce or construe the settlement. Because Danny Joe did not plead and prove his satisfaction of this condition precedent, Brian contends that the award of attorney's fees for the appeal of the contract action cannot stand.

This issue hinges on the meaning of a paragraph in the settlement agreement concerning dispute resolution and attorney's fees—especially one sentence within that paragraph:

> 11. If one or more disputes arise with regard to the interpretation and/or performance of this Agreement or any of its provisions, the parties agree to attempt to resolve the matter by telephone conference. Initiated by the attorneys, with NIKKI DeSHAZO, the mediator who facilitated this settlement [sic]. If the parties' differences cannot be resolved by such telephone conference, then each agrees to schedule [a half-day] mediation with such mediator within thirty (30) days to resolve the disputes and to share equally the costs of such mediation. *If a party refuses to mediate, then such party thereby waives any recovery for attorney*['*s*] *fees or costs incurred in any litigation brought to construe or enforce this Agreement.* Otherwise, if the parties are unable to resolve their dispute by mediation, then the prevailing party or parties shall be entitled to recover reasonable attorney['s] fees, costs and expenses, including the cost of the mediation. [Emphasis added.]

To resolve this issue, we must first determine whether mediation was indeed a condition precedent to attorney's fees, which under this unambiguous settlement agreement is a question of law that we review de novo. *Progressive Cty. Mut. Ins. v. Trevino*, 202 S.W.3d 811, 814 (Tex. App.—San Antonio 2006, pet. denied); *Beard Family P'ship v. Commercial Indem. Ins.*, 116 S.W.3d 839, 844 (Tex. App.—Austin 2003, no pet.).

"A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)). In order to determine whether a condition precedent exists, the intention of the parties must be ascertained, and that can be done only by looking at the entire contract. *Id.* at 109. Although no particular words are necessary for the existence of a condition, terms such as "if," "provided that," "on condition that," or some other phrase that conditions performance usually connote an intent for a condition rather than a promise. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 683 (Tex. 2017).

However, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result, then the agreement will be interpreted as creating a covenant rather than a condition. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). "A covenant, as distinguished from a condition precedent, is an agreement to act or refrain from acting in a certain way." *Solar Applications*, 327 S.W.3d at 108. Breach of a covenant may give rise to a cause of action for damages,

13

but it does not affect the enforceability of the remaining provisions of the contract unless the breach is a material or total breach. *Id.*

When faced with a settlement agreement that had terms highly similar to the one we consider today, a Texas federal court determined that mediation was a condition precedent to attorney's fees. *See TPS Tejas GP, L.L.C., v. Elec. Reliability Council of Tex., Inc.*, No. A-05-CA-614-SS, 2006 WL 8432422, at *1 (W.D. Tex. Nov. 7, 2006) (order). Under the mediated settlement agreement (MSA) in that case, first there was to be a telephone conference: "the parties agree to attempt to resolve [disputes over the terms of the MSA] by telephone conference with Joseph H. Hart, the Mediator who facilitated the settlement." *Id.* (alteration in original). Then there was to be mediation: "If the parties cannot resolve their differences by such telephone conference, then each agrees to schedule one day of mediation with such Mediator within thirty days . . . ." *Id.* Finally, there was the critical provision concerning attorney's fees: "If a party refuses to mediate, then such party thereby waives any recovery for attorney[']s fees or costs . . . ." *Id.* In the court's view, the plain meaning of these terms, read together, was "that mediation consisting of at least a telephone conference followed by a day of face-to-face contact is a condition precedent to recovery of attorney[']s] fees and costs." *Id.*

We reach a like conclusion here. The sentence in question begins with the word "if," and that word is among the few that our supreme court has expressly "blessed" as a means to create a condition precedent. *Witt v. Chesapeake Expl., L.L.C.*, 276 F.R.D.

14

458, 468 (E.D. Tex. 2011) (citing *Criswell v. Eur. Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990)). While it is possible to use the word "if" in nonconditional ways,[4] the settlement here uses the word to effect a conditional contract term: after a telephone conference, the next step was to be mediation, and "if" a party did not mediate, then that party could not collect attorney's fees incurred in litigation to construe or enforce the settlement. The obligation (payment of attorney's fees) was thus made subject to and dependent upon an act (participating in mediation)—i.e., a condition precedent. *See Solar Applications*, 327 S.W.3d at 108.

Furthermore, rather than leading to an "absur[d] or impossible result," *Hohenberg Bros.*, 537 S.W.2d at 3, interpreting this language as creating a condition precedent "is consistent with the purpose of" the relevant terms and the parties' interests. *See Tabe v. Tex. Inpatient Consultants, LLLP*, 555 S.W.3d 382, 388 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (op. on reh'g). "The purpose of mediation is to assist parties in arriving at a settlement to avoid the expense and investment of time in litigation." *Ochei v. Mary Manning Walsh Nursing Home Co.*, No. 10 CIV. 2548 CM RLE, 2012 WL 1977443, at *1 (S.D.N.Y. May 31, 2012) (mem. op. & order). Because mediation might have avoided, in the first place, the ever-swelling bill for attorney's fees that Danny Joe sought to collect in this suit, it is wholly reasonable to construe mediation as a condition precedent for attorney's fees.

---

[4] *See, e.g.*, *M.E.N. Water Supply Corp. v. City of Corsicana*, 564 S.W.3d 474, 479–81 (Tex. App.—Waco 2018, pet. denied).

Such an interpretation is also consistent with the public policy of this state, as well as this court's duty to ensure that that policy is put into practice. "It is the policy of this state to encourage the peaceable resolution of disputes and the early settlement of pending litigation through voluntary settlement procedures." *JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 489 n.10 (Tex. 2019) (cleaned up) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 154.002). "Trial and appellate courts are charged with the responsibility of carrying out this public policy." *Brooks v. Brooks*, 257 S.W.3d 418, 421 (Tex. App.—Fort Worth 2008, pet. denied).

We therefore hold that under the settlement agreement, mediation was a condition precedent for attorney's fees.

But Danny Joe argues that even if the relevant terms create a condition precedent, the award should nonetheless stand because Brian "neither pled nor proved" that Danny Joe failed to satisfy this condition precedent. In Danny Joe's view, the judgment must be upheld because Brian offered no evidence that Danny Joe failed to satisfy this condition precedent.

Danny Joe has misconstrued the burdens of pleading and proof with respect to conditions precedent; as the plaintiff, the burden was on him to plead and prove satisfaction of any conditions precedent. Performance of any condition precedent is an essential element of the plaintiff's case. *Grimm v. Grimm*, 864 S.W.2d 160, 161 (Tex. App.—Houston [14th Dist.] 1993, no writ). "A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied."

16

*Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 673 (Tex. 2020) (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998)). "Where a contract contains conditions precedent, there must be some allegation by the plaintiff that the conditions have been met." *WCW Int'l, Inc. v. Broussard*, Nos. 14-12-00940-CV, 14-12-01077-CV, 14-12-01139-CV, 2014 WL 2700892, at *16 (Tex. App.—Houston [14th Dist.] June 3, 2014, pet. denied) (mem. op. on reh'g) (citing *Grimm*, 864 S.W.2d at 161); *see Enter. Prods. Partners, L.P. v. Energy Transfer Partners, L.P.*, 529 S.W.3d 531, 540 (Tex. App.—Dallas 2017), *aff'd*, 593 S.W.3d 732 (Tex. 2020). Under Rule 54, if a plaintiff pleads generally that all conditions precedent have been met, then the plaintiff need only prove performance of those conditions specifically denied by the defendant.[5] *Winn v. Spectrum Primary Care, Inc.*, No. 2-07-038-CV, 2008 WL 1867296, at *5 (Tex. App.—Fort Worth Apr. 24, 2008, pet. denied) (mem. op.); *see Cmty. Bank & Tr., S.S.B. v. Fleck*, 107 S.W.3d 541, 542 (Tex. 2002) (per curiam). "However, if a plaintiff fails to plead performance of the conditions precedent, she may nevertheless obtain judgment on her cause of action if she meets her burden of proving

---

[5]As Professor Williston explained, federal Rule 9(c) and its state counterparts like Texas Rule 54 were "departure[s] from the common-law requirement that detailed supporting facts had to be alleged to show that conditions precedent had been met or performed." 13 *Williston on Contracts* § 38:26 (4th ed.). By contrast, the federal and state rules of civil procedure still "requir[ed] some allegation that conditions precedent have been performed or have occurred" but "permit[ted] the allegation of performance to be general." *Id.*

all essential elements of the cause, including the performance of any conditions precedent." *Grimm*, 864 S.W.2d at 162.

In his petition, Danny Joe failed to specifically allege that he had engaged in mediation before filing suit, nor did he generally allege that all conditions precedent had been satisfied. *See Trevino v. Allstate Ins.*, 651 S.W.2d 8, 11 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). In the absence of any pleading concerning the performance of conditions precedent, Rule 54 did not cast on Brian the burden to specifically plead the failure to perform any condition precedent. *See id.* Nonetheless, in Brian's pro se answer, he specifically pleaded that Danny Joe had forfeited any right to attorney's fees because he had failed to pursue mediation before filing suit. Thus, in any event, the burden to prove the performance of mediation fell upon Danny Joe. *See id.* Danny Joe offered no evidence to discharge that burden.

Because Danny Joe failed to plead or prove the performance of a condition precedent to contractual attorney's fees, we hold that his contract theory does not support an award of attorney's fees. We sustain Brian's second issue.

## C. Interpleader

We next take up Brian's fourth issue in which he observes that only an innocent, disinterested stakeholder may recoup his attorney's fees in an interpleader action. According to Brian, Danny Joe does not qualify as a disinterested stakeholder because he touched off a contractual conflict over the $440,000 in funds he has sought to interplead, and because in this suit he made a sizeable contractual claim to the very same

18

funds. Brian asserts that the trial court therefore abused its discretion by awarding attorney's fees with respect to the interpleader action.

An interpleader suit offers one who holds property a means to interplead or bring "into one action all of the claimants" to that property, turn the "property over to the court, be himself dismissed from the proceeding, and have the court decide which of the claimants is entitled to the . . . property." *Bill of Interpleader*, Black's Law Dictionary (11th ed. 2019) (quoting William Q. de Funiak, *Handbook of Modern Equity* § 108, at 241–42 (2d ed. 1956)); *see* Tex. R. Civ. P. 43. A party is entitled to interpleader relief when it establishes three elements: (1) it is either subject to, or has reasonable grounds to anticipate, rival claims to the same funds; (2) it has not unreasonably delayed filing its action for interpleader; and (3) it has unconditionally tendered the funds into the registry of the court. *Rodriguez*, 547 S.W.3d at 850. Only an innocent, disinterested stakeholder is entitled to attorney's fees to be paid out of the interpleaded funds. *Id.* at 851. "In order to be entitled to such an award, a plaintiff must prove his total disinterest in the stake he holds other than that of bringing it into court so that conflicting claims thereto can be judicially determined." *Id.* (quoting *Wolf v. Horton*, 322 So.2d 71, 73 (Fla. Dist. Ct. App. 1975)).

Based on the state of the record, we cannot conclude that Danny Joe proved his total disinterest in the interpleaded funds. Danny Joe initiated the probate conflict with the Ayerses over the right to inherit the Riefler estate, including the interpleaded $440,000, and "the plaintiff who enters the conflict (by contesting the ownership of the

19

fund or by disputing the correct amount of his liability) will not, in the absence of special circumstances, be awarded any expenses." *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1311 (5th Cir. 1980). After the parties entered a settlement agreement in the prior proceeding and Ronald Ayers tried to contest the settlement, Danny Joe pursued a breach-of-contract claim to enforce the settlement's allotment of $440,000 against the Ayerses. That very same contract litigation spilled over into this suit: while Danny Joe's new petition was styled as an "Original Petition in Interpleader," alongside his interpleader action he was continuing to litigate the same contract action against the Ayers camp (in the same cause number as the prior litigation no less), and he used that contract action to lay claim to the interpleaded funds. "Under the unambiguous meaning of [the] term 'disinterested stakeholder,' a party who asserts a claim to the interpleaded funds is not a disinterested stakeholder." *Rodriguez*, 547 S.W.3d at 852 (quoting *FinServ Cas. Corp. v. Transam. Life Ins. Co.*, 523 S.W.3d 129, 141 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)). Indeed, the bulk of the relief Danny Joe sought in this interpleader action was not for attorney's fees that were attributable to the interpleader itself, but for attorney's fees that he previously incurred in prosecuting the prior litigation and its subsequent appeal; well over $63,000 of the fees were for the prior litigation and appeal, compared to just under $17,000 for the interpleader. These facts suggest that Danny Joe's interpleader action was nothing more than a pretext to enlarge his recovery on the prior contract litigation. When faced with such a scenario, the First Circuit upheld the outright denial of attorney's fees to the interpleading party.

20

*See Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (1st Cir. 1962). The court reasoned that denial was appropriate because even though a small portion of the fees were "undoubtedly" attributable to an interpleader in which the party was disinterested, "the great bulk" of the fees that the party had demanded were actually attributable to litigating other claims for which the party was "in no way disinterested or entitled to a fee." *Id.*

We therefore hold that Danny Joe is not a disinterested stakeholder, both because of his role in initiating the original dispute over the interpleaded funds—a dispute that he continued to litigate in this suit—and because the vast majority of the relief that Danny Joe sought was inextricably tied to the prior conflict. Because Danny Joe is not a disinterested stakeholder, he is not entitled to attorney's fees on his interpleader claim.[6] We sustain Brian's fourth issue.

## D. Conclusion

In its findings of fact and conclusions of law, the trial court found that there were two bases that authorized an award of attorney's fees: the breach-of-contract and interpleader actions. We have determined that no attorney's fees could be awarded on a contract theory because Danny Joe failed to satisfy his burdens of pleading and proof with respect to a condition precedent. We have also determined that interpleader is not

---

[6]This conclusion renders it unnecessary to consider Brian's third issue in which he argues that the interpleader was insupportable because Danny Joe failed to satisfy the other elements of an interpleader action.

21

a viable basis for attorney's fees because Danny Joe was not a disinterested stakeholder.[7] With no other basis to authorize attorney's fees, we conclude that the trial court abused its discretion by awarding them.

### III.   DANNY JOE'S CROSS-APPEAL

In his sole issue on cross-appeal, Danny Joe argues that the trial court abused its discretion by denying him additional attorney's fees in the event that Brian's appeal was unsuccessful.  But as set out above, Brian's appeal was wholly successful, and in any event, we have determined that the trial court had no basis to award Danny Joe attorney's fees in the first place.

The mootness doctrine applies to cases in which a justiciable controversy exists between the parties at the time the case arose, but the live controversy ceases because of subsequent events.  *Matthews, on behalf of M.M. v. Kountze ISD*, 484 S.W.3d 416, 418 (Tex. 2016).  Our resolution of Brian's appeal empties Danny Joe's cross-appeal of any live controversy.  *See Dryzer v. Bundren*, No. 07-12-00167-CV, 2014 WL 1856849, at *5 (Tex. App.—Amarillo May 6, 2014, pet. denied) (mem. op.) (holding that the reversal of an attorney's fee award mooted a cross-appeal seeking increased attorney's fees).

---

[7]Moreover, contrary to the trial court's stated belief, it could not award attorney's fees for a guardianship proceeding that took place in the district court of another county, *see In Estate of Larson*, 541 S.W.3d 368, 374 (Tex. App.—Houston [14th Dist.] 2017, no pet.), much less to a person who did not file the application that initiated those guardianship proceedings.  *See* Tex. Est. Code Ann. § 1155.054(a) (authorizing payment of attorney's fees "to an attorney who represents the person who filed the application" to create a guardianship).

Because the cross-appeal is moot, we need not address its merits. We overrule Danny Joe's sole issue.

## IV. CONCLUSION

We reverse the trial court's judgment and render judgment that Danny Joe take nothing.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: December 3, 2020